NOS.
12-05-00345-CR

         
12-05-00346-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

ADAM ROBERT LEWIS,    §                      APPEAL FROM THE 173RD

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      HENDERSON
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            Adam Robert
Lewis appeals his convictions for aggravated assault on a public servant and deadly
conduct with a firearm.  In four issues,
Appellant contends that he was denied the effective assistance of counsel and
that the trial court erred when it failed to conduct a competency hearing on
its own motion.  We affirm
in part and dismiss for want of jurisdiction in part.

 

Background
and Procedural History








            In
2001, Henderson County constables John Floyd and Daner Stansberry attempted to
serve a “mental health” warrant on Appellant. 
According to their testimony, Stansberry and Floyd approached the
trailer, identified themselves as constables, and asked Appellant to come with
them.  Appellant declined and insisted
that they did not have a warrant.  They
entered the trailer and Floyd asked Appellant to review their warrant.  When Appellant did not respond, Stansberry
walked into the back bedroom.  Appellant
was in an adjoining bathroom.  He had
reached his arm around the door and was pointing a pistol into the bedroom at
Stansberry.  Stansberry stepped back, and
the gun was fired.  The two men retreated
from the trailer.  Sometime later, the
Smith County special weapons and tactics (SWAT) task force extricated Appellant
from the trailer.

            A
Henderson County grand jury returned indictments against Appellant for two
counts of aggravated assault on a public servant.  A trial was held in April 2002, and Appellant
pleaded not guilty.  The jury found
Appellant guilty of aggravated assault, as charged in one of the indictments,
and deadly conduct with a firearm, as a lesser included offense of the second
aggravated assault charge.  The jury
assessed punishment at twenty years and five years of imprisonment,
respectively.  In May 2002, Appellant
filed a motion for new trial raising three complaints.  In June 2002, a new attorney appeared for
Appellant and filed an amended motion for new trial alleging six complaints
including those previously alleged.  A
hearing was held and the State objected to the amended motion on the grounds
that it was not filed timely.  The trial
court allowed a hearing on both motions. 
No further evidence was adduced, and the trial court granted the motion
for new trial after hearing the arguments of counsel.

            The
State appealed the granting of the motion for new trial.  We reversed, holding that the grounds
advanced in the first motion were without merit and that the court lacked
jurisdiction to consider the second and untimely motion for new trial.  State v. Lewis, 151 S.W.3d 213,
225 (Tex. App.–Tyler 2004, pet. ref’d) (op. on reh’g).  Appellant then sought to appeal his
conviction.  He had not filed notice of
appeal until well after the prescribed time, and we dismissed his appeal for
lack of jurisdiction.  Lewis v.
State, Nos. 12-04-00372-CR, 12-04-00373-CR, 2004 WL 3153761, at *1
(Tex. App.–Tyler Dec. 30, 2004, no pet.) (per curiam) (not designated for
publication).

            Appellant
then applied for a writ of habeas corpus alleging that the attorney who filed
the amended motion for new trial rendered ineffective assistance of counsel
because notice of appeal was not filed in a timely fashion.  The trial court recommended that relief be
granted, and the court of criminal appeals granted the writ and allowed an out
of time appeal.  Ex parte Lewis,
Nos. AP-75,234, AP-75,235, 2005 WL 2219038, at *1 (Tex. Crim. App. Sept. 14,
2005) (per curiam) (not designated for publication).  Appellant then filed notice of appeal and
another motion for new trial.  The State,
contending that the granting of an out of time appeal did not allow for
consideration of a motion for new trial, asked this Court to prohibit the trial
court from considering or ruling on the motion for new trial.  We denied the writ of prohibition, holding
that the State had not shown that the trial court intended to act without
jurisdiction.  In re State,
180 S.W.3d 423, 427 (Tex. App.–Tyler 2005) (orig. proceeding).  Following our decision, Appellant withdrew
his request for a hearing on the pending motion for new trial and proceeded
with this appeal.

 

Ineffective
Assistance of Trial Counsel

            In
his first and second issues, Appellant contends that he received ineffective
assistance of counsel because his attorney failed to present expert testimony
regarding his mental status or mental health.

Applicable Law

            Claims of ineffective assistance of
counsel are evaluated under the two step analysis articulated in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674
(1984).  The first step requires the
appellant to demonstrate that trial counsel’s representation fell below an
objective standard of reasonableness under prevailing professional norms.  See Strickland, 466 U.S.
at 688, 104 S. Ct. at 2065; McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996).  We review
counsel’s representation on the basis of the totality of the representation and
not for isolated or incidental deviations from professional norms.  See Robertson v. State,
187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

            The
second step requires the appellant to show prejudice from the deficient
performance of his attorney.  See Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  To establish prejudice, an appellant must
show that there is a reasonable probability that the result of the proceeding
would have been different but for counsel’s deficient performance.  See Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068.  

            We
begin with the strong presumption that counsel was effective.  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
As part of this presumption, we presume counsel’s actions and decisions
were reasonable and were motivated by sound trial strategy.  See id.  Appellant has the burden of rebutting this
presumption, which is ordinarily accomplished by presenting evidence regarding
trial counsel’s strategic decisions.  See
id.; see also Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998) (Record inadequate on direct appeal to evaluate whether trial
counsel provided ineffective assistance of counsel).

Analysis

            Appellant
complains that his trial counsel did not present evidence from a medical health
expert at his trial.  Appellant marshals
portions of the record to suggest that he suffered from a mental illness and
directs us to the recent decision of the court of criminal appeals in Ex
parte Briggs, 187 S.W.3d 458 (Tex. Crim App. 2005), where the court
found that the applicant had received ineffective assistance of counsel.  In Briggs, there was an
affidavit from trial counsel stating that he did not hire an expert witness to
prepare for trial or to testify at trial because his client’s family did not
provide him with money to hire an expert. 
Id. at 465-66.  The
court of criminal appeals held that this was no strategy at all and offered
alternatives that counsel should have explored in light of his client’s limited
financial resources.  Id.
at 468.

            In
this case, Appellant did not present evidence of the strategic reasons for his
attorney’s decisions with respect to presenting expert testimony.  This alone could be enough to resolve this
matter.  See Freeman v.
State, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003); see also Ortiz
v. State, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) (“If counsel's
reasons for his conduct do not appear in the record and there is at least the
possibility that the conduct could have been legitimate trial strategy, we will
defer to counsel's decisions and deny relief on an ineffective assistance claim
on direct appeal.”).  The reasons for
counsel’s actions, however, are not difficult to discern from the record.  There is no evidence that Appellant was
insane or that he suffered from a significant mental illness.  Appellant was evaluated by professionals at
the Andrews Center shortly after he was taken into custody.  He was not diagnosed with any mental illness
and was returned to the jail. 
Additionally, Dr. Andrews, a clinical psychologist, conducted an
exhaustive evaluation of Appellant’s sanity and competence to stand trial.  His report was requested by the district
court in Navarro County where Appellant had felony charges pending, and the
parties agreed to adopt and incorporate the report into the evidence of this
case at a hearing held on March 15, 2002.

            Dr.
Andrews interviewed Appellant on two occasions and spoke with members of his
family and his counsel.  He concluded
that “[n]o mental health, cognitive, or psychological problem appears to exist
which would compromise [Appellant’s] competency as long as he remains alcohol
and drug free.”  He noted that the use of
“chemical substances” could interfere with Appellant’s ability to cooperate
with his attorney and to control his behavior in the courtroom.  Furthermore, he concluded that there were not
“mental health, cognitive, or psychological problems which at the time of the
alleged offense would have interfered with the defendant’s ability to know
right from wrong or  to know what he was
doing.”  Dr. Andrews concluded that
substance abuse could “certainly have clouded the defendant’s judgment and may
be considered a mitigating circumstance in this alleged offense.”  Additionally, there was testimony from the
nurse at the jail that Appellant appeared to be intoxicated when he was first
brought into the jail and that he exhibited bizarre behavior at that time.  She testified that she had not seen a return
of the bizarre behavior in the months after he had been incarcerated and that
Appellant was able to speak with her coherently by the morning following his
arrest.[1]  

            On
the other hand, there is evidence that would cause an attorney representing
Appellant to have inquired further about Appellant’s mental condition.  First, there is the application for court
ordered temporary mental health services. 
This is a preprinted form that simply says that “the proposed patient is
mentally ill and meets the criteria as set out in section 50 of the Texas
Mental Health Code for court ordered temporary mental health services.”  This application is attested to by Glynn
Lewis, Appellant’s father, in which he also states that Appellant had
threatened Glynn’s life, had threatened his own life, had destroyed property,
suffered from “real bad” mood swings, and was violent toward people around him.


            Additionally,
after Appellant filed a motion asking the trial court to reduce his bond, the
trial court ordered that the Andrews Center evaluate him to determine if he
needed any medication.  Dr. Timothy J.
Furlong, a staff psychiatrist at the Andrews Center and a medical doctor, wrote
a letter to the court in which he noted that he observed no overt evidence of
mental illness during the time of his evaluation and no “clear indication for
psychiatric medication, based upon his self–report and my observations.”  Dr. Furlong did allow that it was possible
that Appellant was mentally ill but “so highly defended psychologically that he
can hide it or deny it to himself.”  He
also wrote that it was possible that Appellant’s drug use exacerbated an
underlying psychotic illness or that he had sustained brain damage from “years
of intravenous amphetamine abuse, which might explain some of the psychotic–like
behaviors observed by his father even when [he] was apparently off drugs.”[2]

            Finally,
Appellant’s mother and father both testified that Appellant had periods of
difficulty.  His mother testified that
she “would like to believe that anything that is wrong is all about drugs, but
I don’t know that.”  Appellant’s father
testified that Appellant was not himself the day he was arrested and that he
had a mental health problem.  

            Given
all of the evidence in the record, the course of action undertaken by his
attorney was certainly within the wide range of effective assistance of
counsel.  Appellant’s counsel was aware
of the potential mental health issues in this case.  Counsel had a report from a clinical
psychologist concluding that Appellant did not suffer from a mental illness and
another report that merely allowed for the possibility of mental illness or
brain damage from the abuse of drugs. 
Furthermore, counsel indicated to the court that he had retained an
expert to evaluate an insanity defense.[3]  

            Balanced
against this is the evidence of Appellant’s persistent use of
methamphetamine.  Presenting the
available expert testimony—Appellant has not brought forward any additional
expert testimony to support his claim—would have provided the jury with
Appellant’s own statements about his persistent use of an illegal
substance.  Because the available expert
testimony would not have provided a defense, it was a reasonable decision not
to use that testimony both because it was not helpful and to limit inquiry into
Appellant’s use of controlled substances.

            Appellant
has also failed to prove that he was prejudiced by his attorney’s course of
action.  In Briggs the
court of criminal appeals concluded that it is “highly likely that a jury would
have returned with a ‘not guilty’ verdict” if the evidence adduced at the
hearing on the habeas corpus had been introduced at a trial.  Id. at 470.  That standard is not met here because the
proposed expert testimony would have been that Appellant was not mentally
ill.  Against that was only Appellant’s
father’s conclusion that he was mentally ill. 
The father’s conclusions are suspect because he did not know Appellant
was using drugs.  That taint carries over
to the preliminary conclusions of Dr. Furlong which rested, at least in part,
on the statement of Appellant’s father that Appellant behaved erratically when
he was not using drugs.  That statement
cannot be reconciled with Appellant’s statement, given under oath, that he used
drugs nearly every day.  

            Although
Appellant does not make the argument formally, counsel can also be ineffective
for failing to investigate or to present evidence in mitigation.  See, e.g., Rompilla v. Beard,
545 U.S. 374, 378-79, 125 S. Ct. 2456, 2468-69, 162 L. Ed. 2d 360 (2005); Ex
parte Woods, 176 S.W.3d 224, 225-26 (Tex. Crim. App. 2005).  But counsel did present evidence in
mitigation including Appellant’s mother and father’s assessment of his mental
condition and the testimony of the mother’s divorce attorney about issues
within the family.  The available expert
testimony, concluding that Appellant was not mentally ill, was not so helpful
that the decision not to use it had the effect of denying Appellant’s right to
counsel.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064 (Ineffective assistance of counsel will be
proven only upon a showing that the attorney made errors so serious that
Appellant was denied his Sixth Amendment right to counsel.).

            The
evidence does not overcome the presumption that counsel made reasonable
strategic choices.  Appellant’s
suggestion that he was harmed by the failure to present expert testimony is
merely speculation, especially when the experts whose opinions are in the
record do not support the arguments he now advances.  We overrule Appellant first and second
issues.

 

Ineffective
Assistance of Appellate Counsel

            In
his third issue, Appellant complains that his first appellate lawyer failed to
provide effective assistance of counsel. 
Specifically, he argues that counsel should have argued that the trial
court ruling granting a new trial could be sustained on the grounds advanced in
the original motion for new trial.

            Our
jurisdiction to consider this claim is not immediately evident.  Our jurisdiction is prescribed by the Texas
Constitution and by statute.  See Tex.
Const. art. V, § 6(a); Tex. Code
Crim. Proc. Ann. art. 4.03 (Vernon Supp. 2006).  The right to appellate review in criminal
matters is provided by article 44.02 of the Texas Code of Criminal
Procedure.  This review is generally
understood to be of the judgments of the trial courts as defined by article
42.01 of the Code of Criminal Procedure. 
See State v. Sellers, 790 S.W.2d 316, 321 n.4 (Tex. Crim.
App. 1990).  

            More
generally stated, we review “cases.”  See
Tex. Const. art. V, § 6(a); Tex. Code Crim. Proc. Ann. art. 4.03.[4]  The term is undefined but the court of
criminal appeals has held that, for appellate purposes, a “case” is the “aggregate
of facts that resulted in a conviction for a single offense.”  Callins v. State, 726 S.W.2d
555, 557 (Tex. Crim. App. 1986).  The
appellate rules conform to the understanding that our review is of the
proceedings in the trial court.  See,
e.g., Tex. R. App. P. 33.1(a)(1)
(As a prerequisite, the record must show that “the complaint was made to the
trial court.”).  

            There
are, however, instances where we review postconviction matters that do not
involve trial court action or inaction. 
For example, we review claims that counsel was ineffective during the
time when a motion for new trial could have been filed.  See, e.g., Mallett v.
State, 65 S.W.3d 59, 67 (Tex. Crim. App. 2001).  Furthermore, under the procedure for
frivolous appeals, we implicitly review the effectiveness of appellate counsel
and order remand for appointment of new counsel and additional briefing when
counsel has failed to raise an arguable ground for appeal.  See Smith v. Robbins, 528 U.S.
259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000); Bledsoe v. State,
178 S.W.3d 824, 826-28 (Tex. Crim. App. 2005).[5] 

            When
the court of criminal appeals granted habeas corpus relief to Appellant, it
ordered that the dates in this case be calculated, for purposes of the rules of
appellate procedure, as if the conviction had been entered on the date of its
mandate.  See Ex parte Lewis,
2005 WL 2219038, at *1.  Arguably, this
places the decision of this Court into the aggregate of facts that resulted in
the conviction.[6]  But that
calculation tool is a useful fiction to vindicate Appellant’s right to appeal
and does not make our previous decision an action of the trial court.  In fact, our prior decision came during a
time that the trial court did not have jurisdiction over this case.  See Tex.
R. App. P. 25.2(g).  Furthermore,
this claim is not like the procedure for frivolous appeals or the motion for
new trial practice in which we review a part of the case at the time it is
active before us or during the time the appeal was being perfected.

            A
reasonable understanding of our jurisdiction does not comprehend review of procedural
due process claims arising from a previous appeal in the case.  However, even if we have jurisdiction to
consider this complaint, it is without merit. 
Counsel made the argument that Appellant now complains was not made, and
we held that the trial court could not grant the motion for new trial on the
grounds advanced in the first motion for new trial.  Lewis, 151 S.W.3d at 225 (“There
is no merit to any of the three grounds asserted in the original motion for new
trial.”). Counsel was not ineffective, and our conclusion on the matter of the
first motion for new trial is the law of this case.  See Granviel v. State, 723
S.W.2d 141, 147 (Tex. Crim. App. 1986). 
We dismiss Appellant’s third issue for want of jurisdiction.[7]


 

Competency
Hearing

            In
his fourth issue, Appellant complains that the trial court failed to conduct a
competency hearing on its own motion.

Applicable Law

            A
defendant is presumed to be competent to stand trial.  Tex.
Code Crim. Proc. Ann. art. 46.02 §1A(b) (Vernon 2004).[8]  A defendant is incompetent to stand trial if
he does not have a sufficient present ability to consult with his attorney with
a reasonable degree of rational understanding, or a rational as well as a
factual understanding of the proceedings against him.  Id. art. 46.02(a). 

            When
the issue of competency is raised prior to trial, the trial court is required
to conduct a competency inquiry if there is any evidence suggestive of
incompetency.  McDaniel v. State,
98 S.W.3d 704, 710 (Tex. Crim. App. 2003). 
After the competency inquiry, the trial court is required to impanel a
jury to decide the issue of competency if there is “some evidence” that the
defendant lacks competence.  Id. at
710-11; see also Tex. Code Crim.
Proc. Ann. art. 46.02 § 4(a).  Our
review of a trial court decision not to impanel a jury is for an abuse of
discretion.  Moore v. State,
999 S.W.2d 385, 393 (Tex. Crim. App. 1999). 
Furthermore, a trial court’s factual determinations regarding a
defendant’s competency are entitled to “great deference.”  McDaniel, 98 S.W.3d at 713.

Analysis 

            The
trial court ordered a competency evaluation on December 14, 2001.  This order was made in the context of a hearing
to consider a reduction of bail.  Another
hearing was held on February 15, 2002. 
Dr. Andrews’s report had been prepared but was not entered into evidence
at that time.  Appellant testified that
he had no objection to the report being provided to the State and that Dr.
Andrews had found him competent to stand trial. 
The court then ordered Appellant to be evaluated by Dr. Furlong  to determine whether he needed any medication.  On February 28, 2002, another hearing was
held on the matter of Appellant’s bail. 
The court indicated that it had seen Dr. Furlong’s report and stated
that the “incompetency issue has already been resolved.”  Later in the hearing, the prosecutor asked
the court if it had received Dr. Andrews’s report.  The court had not received the report but
ordered that it be filed and made a part of the record.  The court further stated, “But I thought – –
it was my understanding we were going to rely on that for purposes of this
trial.”  Appellant’s counsel agreed that
the report should be used “on the competency [issue].” 

            There
was more discussion between Appellant’s counsel and the trial court about the
report at a hearing held on March 15, 2002, as follows:

 

            Court:                                It’s
my recollection, which may fail me, that he’s charged with a case in Navarro
County and the issue of competency was raised in that case and you’re his
counsel, correct.

 

                [Appellant’s 

                counsel]:          Yes, sir.

 

                Court:                                And
y’all agreed – – I don’t know if it was just an informal agreement or a
stipulation on the record, whether or not that competency evaluation would be
used and relied on in this case, also.

                Counsel:           Your Honor, I believe what we agreed to was to make that
available to the Court in this case, yes, sir.

 

                Court:                                For
the Court to rely on that. So the issue of competency will not be raised, then,
in this case?

 

                Counsel:           Your Honor, I don’t expect it will at this time, no, sir,
unless – – it’s my understanding competency can be raised at any time even into
the trial. 

 

                Court:                                I
understand.  As far as you now know, you
feel like you don’t need to raise that issue?

 

                Counsel:           That’s correct, Your Honor.

 

 

            On
the basis of these reports, and after discussion with Appellant’s counsel, the
trial court decided not to impanel a jury to determine the issue of
competence.  Appellant now alleges that
there was “some evidence” that required the court to order a jury trial on this
issue on its own motion.  Specifically,
Appellant suggests the trial court was obligated to conduct a jury trial on the
issue of competence because his initial arrest was initiated on the basis of a
mental health warrant and because Dr. Furlong’s report stated, as quoted by
Appellant, “It is not clear whether he, Adam, could cooperate with his
attorney.”  

            But
the evidence that Appellant was arrested on a mental health warrant pertains to
a time months before the trial court became involved in this matter.  Assuming the trial court knew of it, such
information might cause a cautious jurist to conduct an inquiry.  Standing alone, however, the fact that a
person had been arrested on a mental health warrant months before the trial
court acquired jurisdiction is insufficient to trigger a requirement for a jury
trial on the issue of competence.

            The
second piece of evidence is both misquoted and misleading.  Dr. Furlong never made any written statements
that Appellant might have difficulty cooperating with his attorney.  Rather, Dr. Andrews made that statement in
his report.  The context is important,
and we reprint the relevant paragraph here.

 

Although the
defendant provided statements indicating awareness of the charge he faces and
the proceedings against him, it was not clear from the interview whether he
could cooperate with his attorney. 
Doubt about his ability to cooperate was also expressed by his attorney
when questioned by the examiner, and it was decided to conduct a second
interview of the defendant with his attorney present.  (Underscore added.)

            Dr.
Andrews followed up and met with Appellant and his attorney.  He concluded that Appellant appeared to have
a basic understanding of the nature of the charges and proceedings against him
and appeared motivated to work with his attorney.  Dr. Andrews wrote that Appellant had “no
mental health, cognitive or psychological problems.” 

            In
sum, the only competent evidence Appellant advances to suggest that the trial
court was required to hold a hearing on the matter of his competence is the
fact that a mental health warrant had been issued for his arrest.  The trial court was attentive to the mental
health issues in this case and properly determined, after Appellant had been
examined by two professionals, that a further hearing on the matter was unnecessary.  We overrule Appellant’s fourth issue.

 

Conclusion

            We
are without jurisdiction to consider Appellant’s third issue, and we dismiss
that portion of the appeal.  Having
overruled Appellant’s first, second, and fourth issues we affirm
the judgments of the trial court.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

 

Opinion
delivered September 29, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

(PUBLISH)











[1]
Appellant was struck in the head with a rifle during his apprehension and may
have suffered a concussion.





[2]
This last conclusion appears to be based on incomplete information.  Appellant’s father believed that Appellant
did not use drugs.  Appellant testified
under oath that he was an intravenous methamphetamine user and told the jury
and Dr. Andrews that he had used drugs on a daily basis for more than a decade.





[3] Appellant testified that he concurred in the
decision not to advance an insanity defense and that he had never considered
using such a defense.





[4]
This is not the only term used.  See Tex. Code Crim. Proc. Ann. art. 44.02,
44.25 (Vernon Supp. 2006) (“criminal action”). 





[5]
The habeas corpus procedure is the sole postconviction collateral attack for
final felony convictions.  See Ex
parte Adams, 768 S.W.2d 281, 287 (Tex. Crim. App. 1989); McBride
v. State, 114 S.W.3d 556, 557 (Tex. App.–Austin 2002, no pet.).  This general principle does not resolve the
issue, however, because Appellant’s conviction is not final until this appeal
is resolved.  See Ex parte
Brown, 662 S.W.2d 3, 4 (Tex. Crim. App. 1983).  





[6] After all, Appellant did not have a “conviction”
when the first appeal was brought to this Court because his motion for new
trial had been granted.  See Tex. R. App. P. 21.9 (granting motion
for new trial restores case to its position before the former trial).





[7]
Because we have dismissed rather than overruled it, it appears that Appellant
may bring this claim by way of an application for writ of habeas corpus, if he
has not waived it for failing to raise it in his first application.  See Tex.
Code Crim. Proc. Ann. art. 11.07 §§ 1, 4(a) (Vernon Supp. 2006); Ex
parte Acosta, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984).  Complaints about the inefficacy of appellate
counsel are commonly brought through the habeas procedure.  See, e.g., Ex parte Robinson,
AP-75,485 (Tex. Crim. App. August 30, 2006) (not designated for publication); Ex parte
Seals, AP-75,486 (Tex. Crim. App. August 30, 2006) (not designated for
publication); Ex parte Ramirez, AP-75,487 (Tex. Crim.
App. August 30, 2006) (not designated for publication). 





[8]
Article 46.02 of the Texas Code of Criminal Procedure was repealed effective
January 1, 2004.  See Act of
April 30, 2003, 78th Leg., R.S., ch. 35, § 15, 2003 Tex. Gen. Laws 72.  The article was continued in effect for
proceedings initiated before its repeal. 
Id. § 16.