Bruce Edwin CALLINS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 069–85, 0707–85.

Court of Criminal Appeals of Texas, En Banc

July 2, 1986.

Lee Ann Dauphinot, Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall and David H. Montague, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury, in a single trial, of two aggravated robberies. Punishment for each of the aggravated robberies was assessed at life imprisonment and a $10,000 fine. The Second Court of Appeals dismissed appellant's appeal, holding that it lacked jurisdiction.[1] *Callins v. State,* 680 S.W.2d 680 (Tex.App. —Fort Worth 1984). We granted appellant's petition for discretionary review to determine whether Article 4.04, § 2, V.A.C. C.P.,[2] prevents the Court of Appeals from reviewing appellant's aggravated robbery convictions. Tex.Cr.App. Rule 302(c)(2). We will reverse and remand.

In dismissing appellant's appeal of his aggravated robbery convictions, the Court of Appeals held that Article 4.04, § 2, supra, limits appellate jurisdiction of the aggravated robbery convictions to the Court of Criminal Appeals. The Court of Appeals reasoned that, since the aggravated robbery convictions had been obtained in the same trial as a capital murder conviction, all three convictions constituted a single case and, therefore, must be directly appealed to this Court. Both appellant and the State seem to agree with this interpretation of Article 4.04, § 2, supra. We disagree.

Article 4.04, § 2, supra, in conjunction with Article V, § 5, supra, grants this Court direct appeal jurisdiction over "cases in which the death penalty has been assessed." Article 4.03, V.A.C.C.P., grants the Courts of Appeals direct appeal jurisdiction "coextensive with the limits of their respective districts in all criminal cases except those in which the death penalty has been assessed." As the Court of Appeals correctly noted, the parameters of these jurisdictional limitations depend upon the meaning of a "case."

Despite the fact that our direct appeal jurisdiction depends upon the meaning of a "case," no definition of that term is provided under either Article 4.03 or 4.04, § 2, supra.[3] The common definition of "case" provides little help because of its indefinite meaning.[4] However, our examination of the use of the term "case" throughout the Code of Criminal Procedure, when com-

---

1. Appellant was also convicted of capital murder in the same trial. Punishment for the capital murder was assessed at death. Appellant appealed his capital murder conviction directly to this Court. We reversed the capital murder conviction for misjoinder. *Callins v. State,* No. 69,023 (Tex.Cr.App. July 2, 1986).

2. Article 4.04, § 2, supra, in pertinent part, provides: "The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals." Article 4.04, § 2, supra, mirrors the language of Article V, § 5, of the Texas Constitution. Cf. Article 4.03, V.A.C. C.P. ("The Courts of Appeals shall have appellate jurisdiction coextensive with the limits of their respective districts in all criminal cases except those in which the death penalty has been assessed.").

(All emphasis is supplied by the author of this opinion unless otherwise indicated.)

3. Prior to abandonment of the carving doctrine in *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr. App.1982) (Opinion on Rehearing), there was no need to define a "case" because only one convic-

tion was likely to result from a single trial. The instant trial began on the same day as our abandonment of the carving doctrine, thus leading the State to attempt to obtain multiple convictions in a single trial.

4. "Case" is:
   A general term for an action, cause, suit or controversy, at law or in equity; a question contested before a court of justice; an aggregate of facts which furnishes occasion for the exercise of jurisdition of a court of justice. A judicial proceeding for the determination of a controversy between parties wherein rights are enforced or protected, or wrongs are prevented or redressed; any proceeding judicial in its nature."

   Black's Law Dictionary (5th ed. 1979). Although used in a civil context, at least one Texas court has defined "case" to mean "cause." *City of Big Spring v. Garlington,* 88 S.W.2d 1095, 1096 (Tex.Civ.App.—Eastland 1935) ("Case and cause are synonyms.") Cf. Arts. 21.26 & 21.30, V.A.C.C.P. (terms "case" and "cause" used interchangeably). However, "cause" is likewise left undefined by the Code of Criminal Procedure.

bined with the general meaning of that term, leads us to a more specific understanding of the meaning of "case" as used in Articles 4.03 & 4.04, § 2, supra. See and cf. *Green v. State*, 706 S.W.2d 653, 656, n. 5 (Tex.Cr.App.1985) (meaning of "punishment" derived from context of its use throughout Code of Criminal Procedure).

For example, in Article 42.08, V.A.C.C.P., the term "case" is used to indicate a conviction for a single offense.[5] Article 42.08(a), supra, begins by referring to a defendant being convicted in "two or more cases." In the next sentence, Article 42.08(a), supra, grants the trial court discretion to cumulate punishments "in the second and subsequent convictions." The language of the statute requires the understanding that a conviction involves only one punishment and, therefore, only one offense. This replacement of "conviction" for "case" implies that a "case" consists of a conviction for a single offense.

This understanding of a "case" is consistent with Articles 4.03 & 4.04, § 2, supra, especially when considered in conjunction with the language of Article 37.071(h), V.A.C.C.P.[6] Article 37.071(h), supra, begins by stating that the "judgment of conviction and sentence of death" is subject to automatic direct review by this Court. In the next sentence, Article 37.071(h), supra, states that "[s]uch review" has priority over "all other cases." By directly referring to the "judgment of conviction and sentence of death," the Legislature contemplated review of a single conviction for capital murder and in a single sentence of death. By then requiring preferential treatment for review of such a conviction as distinguished from other "cases," the Legislature impliedly limited a "case" to a conviction for a single offense. Again, therefore, "case" equals conviction for a single offense. Logically, then, convictions and sentences for separate offenses, even if placed in the same document of judgment, are considered separate "cases."

Placing the language of Articles 4.03 & 4.04, § 2, supra, in the above context, the jurisdictional limitations of those provisions become clear. A "case," for appellate purposes, is that aggregate of facts that resulted in a conviction for a single offense. A "case" in which the death penalty has been assessed only refers to those facts that resulted in a conviction for the offense of capital murder and a sentence of death. Consequently, under Article 4.04, § 2, supra, only the direct appeal of a capital murder conviction "in which the death penalty has been assessed shall be to the Court of Criminal Appeals." Any other "convictions" that might have been obtained in the same trial are separate and distinct "cases" and therefore fall under the direct review jurisdiction of the courts of appeals provided in Article 4.03, supra.

■ In the instant appeal, appellant was convicted of two aggravated robberies. The aggregate of facts that resulted in appellant's aggravated robbery convictions obviously did not result in a capital murder

---

5. Article 42.08(a), supra, controls the trial court's ability to cumulate punishment. In pertinent part, it provides:

> When the same defendant has been convicted in two or more cases, and the punishment assessed in each case is confinement in an institution operated by the Department of Corrections or the jail for a term of imprisonment, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction. Except as provided by Section (b) of this article, in the discretion of the court, the judgment in the second and subsequent convictions may either be that the punishment shall begin when the judgment and sentence in the preceding conviction has ceased to operate, or that the punishment shall run concurrently with the other case or cases, and sentence and execution shall be accordingly.

6. Article 37.071(h), supra, provides:

> The judgment of conviction and sentence of death shall be subject to automatic review by the Court of Criminal Appeals within 60 days after certification by the sentencing court of the entire record unless time is extended an additional period not to exceed 30 days by the Court of Criminal Appeals for good cause shown. Such review by the Court of Criminal Appeals shall have priority over all other cases, and shall be heard in accordance with rules promulgated by the Court of Criminal Appeals.

**558**

conviction and sentence of death. While both offenses occurred close in time and place to facts that did result in a capital murder conviction and sentence of death, the aggravated robberies constituted cases separate from the capital murder case. As such, neither aggravated robbery case fits within the death penalty exception noted in Articles 4.03 & 4.04, § 2, supra. Therefore, for purposes of Art. 4.03 & 4.04, supra, we find that the Court of Appeals had jurisdiction to review appellant's aggravated robbery convictions.[7]

The judgment of the Court of Appeals is reversed. This cause is remanded to the Court of Appeals for that court to consider appellant's grounds of error.

ONION, P.J., not participating.

DAVIS, W.C., McCORMICK and WHITE, JJ., concur.

CLINTON, Judge, concurring.

In the distinctly unusual posture of things in these causes, truly there is no extant precedent directly in point. Essentially, the opinions of the Court engage in an analysis of germane constitutional and statutory provisions to conclude that there has been a misjoinder of offense, such that "the trial court was required to sustain appellant's request for election," and that "'case' equals conviction for a single offense [so that] convictions and sentences for separate offenses ... are considered separate 'cases' [for purposes of prescribing jurisdiction on direct appeal]." While harboring some reservations, mainly about incidental observations made along the way and what may be less than complete exami-

nation of the meaning of "case," I join the opinions.[1]

---

7. Both appellant and the State argue that allowing a capital murder conviction which results in the death penalty and other convictions obtained in the same trial to have bifurcated appeals will cause delay and result in inefficient use of judicial resources. While some duplication of the record may be required by splitting these appeals, its occurrence will be extremely rare, as witnessed by the absence of appeals similar to the instant appeal.

1. In Cause No. 69,023, for example, there are allusions to "ambiguities" in prior applications of the concept of "transactions." In Causes Nos. 0069–85 and 0070–85, for another, the conclusion seems further supported by the fact that "criminal case" and "criminal action" are used interchangeably throughout the Code of Criminal Procedure, the latter ordinarily understood to be a "criminal prosecution" seeking to determine guilt or innocence of one accused of a penal offense. See generally, Kemper v. State, 63 Tex.Cr.R. 1, 138 S.W. 1025, 1038–1039 (1911).