**Bobby OGLESBY, Appellant,**

v.

**Ronan Dale SILCOTT, Appellee.**

**No. 12–85–0131–CV.**

Court of Appeals of Texas, Tyler.

April 14, 1987.

Rehearing Denied May 14, 1987.

Trey Yarbrough, Conner, Gillen and Yarbrough, Tyler, for appellant.

Jerry Bain, Bain, Files, Allen & Caldwell, Tyler, for appellee.

## OPINION ON REMAND

COLLEY, Justice.

On April 30, 1986, we delivered our opinion and judgment in this cause, on original submission (709 S.W.2d 45), reversing the trial court's judgment in favor of Ronan Dale Silcott, appellee, and dismissing the cause. The Supreme Court reversed our judgment of dismissal and remanded the cause to this court for determination of appellant's factual sufficiency point not addressed by us in our original opinion. *Silcott v. Oglesby*, 721 S.W.2d 290 (Tex.1986).

We now consider Oglesby's third point of error by which he claims the evidence is factually insufficient to support the jury's affirmative answers to Special Issues Nos. two and four.[1] This point was preserved for review by appropriate assignment of error in Oglesby's timely filed motion for new trial.

Silcott presented four witnesses in his case-in-chief as it related to the alleged abduction of the child by Oglesby: Bobby Oglesby, as an adverse party; Silcott himself; Robert J. Stevens, an investigator employed by Silcott in April of 1983; and Charles Oglesby, son of Bobby Oglesby. No direct evidence of the alleged abduction was introduced. The jury's verdict in favor of Silcott rests solely on circumstantial evidence. Oglesby was called first and his testimony is fairly summarized as follows: On Friday, July 31, 1981, Silcott, Oglesby, his daughter, Brenda (mother of the child Michael), and the child were present with their respective attorneys of record in the 241st District Court for determination of Oglesby's motion to modify an order dated May 23, 1980,[2] appointing Silcott as managing conservator of the child. A visiting judge was presiding at that time, and he postponed the hearing on Oglesby's motion until Monday, August 3, 1981, a time when the regular sitting judge of that court would be back on the bench. When the case was called on Monday, August 3, 1981, by Judge Phillips, Silcott and his counsel, Brenda and her counsel, and Oglesby's counsel were present. Oglesby and the child did not appear. It is undisputed that Brenda and the child spend the night of August 2, 1981, at Oglesby's home in southwest Smith County. Oglesby testified that on the morning of August 3, 1981, he heard Brenda "crank" her car to leave for her home to dress for the 10:00 a.m. court hearing. He also testified that at that time, he was shaving, bathing and dressing in preparation for the court hearing himself. After he finished dressing, he looked out of the window and saw a small motorcycle which the child Michael had been riding earlier that morning lying on the ground. He testified that he went outside and whistled for Michael, but received no response; that at about that same time, two masked men carrying firearms accosted him and threatened to kill him; they struck him and tied his hands behind his back; he persuaded the men to release him on the condition that he would go to the bank and bring back a large sum of money; whereupon, the men did in fact release him and instructed him to get the money and meet them at a designated place later that morning. Oglesby testified that he went to a bank in Tyler, withdrew $6,000 in cash and returned to his motor vehicle (a van), where he also had an additional $20,000 in cash. Oglesby stated that he got in his van and drove to Texarkana, and then drove south on a route close to the Texas-Louisiana border to a place in southeast Texas where he spent the night in the van. The next day or so, he drove the van to his son Charles' house and parked it in the driveway with the keys in it. He further testified that he hired an unidentified man to drive him to Freeport on the Texas Gulf Coast. He related that upon some reflection, he "felt sure Ron Silcott had hired those men to kill [him]." He further testified that he remained on the Texas Gulf Coast for approximately one and one-half years, living and sleeping in unoccupied cabins, tents and cars. He testified that he was hiding out because of the threats against his life. He further testified on cross-examination that he had not seen his grandson since August 3, 1981, up to the date of the trial of this cause in March of 1985. On direct examination, Oglesby positively testified that he did not take the child, and that he had not seen him since

1. Special Issue No. Two inquired whether Oglesby "took or retained possession of the child Michael ... in violation of the Court's order, and/or possessory rights to the child by ... Silcott?" Special Issue No. Four inquired whether Oglesby "took the child Michael ... intentionally and wilfully and acting with gross indifference to the Court order, and/or the possessory rights to the child by ... Silcott?"

2. An appeal was perfected from that order by Oglesby and the judgment was affirmed by this Court. See Oglesby v. Silcott, 620 S.W.2d 820 (Tex.Civ.App.–Tyler 1981, no writ).

August 3, 1981. He testified that he had made two trips to Ohio (Silcott's home state) to search for the child in the neighborhood of Silcott's home.

Silcott's testimony reveals that he made several attempts to locate the child, and finally in April of 1983, he hired former FBI agent Robert J. Stevens, to search for the child. Silcott candidly admitted that he could uncover no evidence that Oglesby took the child, or that he had the child at the time of trial. Silcott testified that it would be his "guess" that his ex-wife Brenda had the child.

Investigator Stevens confessed he could not locate Oglesby, the child or Brenda during the term [3] of his investigation. Mr. Stevens testified that he found no evidence at all that Oglesby "kidnapped" the child.

Oglesby's son, Charles, testified by deposition on October 6, 1982. Charles testified that he did not know the child's or Brenda's whereabouts, but that he had seen her once in September 1982 accompanied by a boyfriend, and that he was of the opinion that at one time she was living in Dallas. Charles also testified that he had last seen the child in July of 1981, and that he had not seen or talked to his father since July 1981, but that he had received a signed power of attorney from his father authorizing him to control a checking account and a certificate of deposit at Southside State Bank in Tyler. Charles also testified that in July 1981, his father was upset about threats against his life. He further testified that he paid the bills for utilities accruing at Oglesby's unoccupied mobile home during Oglesby's absence; and that on his own decision, on one occasion he advanced Brenda $800.00 to $1,000.00, but that he did not otherwise send money on a regular basis to Brenda or to anyone else.

The record reveals that Oglesby returned to Smith County in July 1983 without the child. At the time of trial, the whereabouts of the child and his mother Brenda were unknown. Oglesby testified that he had cared for the child "[a]ll during his life,

practically raised him." It is obvious from the evidence that Oglesby loved his grandson; he sought appointment as Michael's managing conservator in the proceeding which was to have been conducted on August 3, 1981.

Under this record, it seems highly unlikely that Oglesby would hide out for one and one-half years not knowing the whereabouts of his grandson. The question is, are the circumstances shown factually sufficient to support the jury's findings in response to the special issues now under attack. The long-standing rule in circumstantial evidence cases in Texas was explained in *Gulf C. & S.F. Ry. Co. v. Battle*, 169 S.W. 1048, 1049 (Tex.Civ.App.–Austin 1914, writ ref'd), as follows:

> A fact may be proven as well by circumstantial as by positive evidence, and when a reasonable deduction has been drawn by a jury in a civil case from the facts proven, such deduction must be taken as a fact found, though some other hypothesis may [also] be reasonable. In such case the jury are the exclusive judges of the fact proven by the circumstances in evidence.

Fifty-two years later, that same court in *McMillen Feeds, Inc. of Texas v. Harlow*, 405 S.W.2d 123, 130 (Tex.Civ.App.–Austin 1966, writ ref'd n.r.e.), wrote:

> Any disputed fact may be established by circumstantial as well as by direct evidence. In neither case is the burden of proof greater than the preponderance. This rule does not require the quality of absolute certainty, nor does it require the plaintiff to exclude every other possibility. All that is required ... is that the circumstances point to the ultimate facts sought to be established with that degree of certainty as to make the conclusion reasonably probable.

We have carefully studied all of the evidence in this case bearing on the questions submitted by Special Issues Nos. Two and Four. Another hypothesis, that Oglesby merely aided his daughter in the abduction

---

**3.** According to his statement for services rendered to Silcott, he worked on the case from

November 22, 1982, to January 31, 1984.

of the child, is reasonably established by the circumstances. Nevertheless, under the rules announced in *McMillen* and *Battle,* we cannot conclude that the evidence in this case is factually insufficient to support the jury's answers to the special issues. Oglesby's narration of the events of the morning of August 3, 1981, viewed in light of his conduct during the ensuing one and one-half years, and the fact of his obvious devotion to his grandson, render his testimony unreliable, as the jury impliedly found. The point of error is overruled.

The judgment is affirmed.