Adam Robert LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 12–05–00345–CR, 12–05–00346–CR.

Court of Appeals of Texas,
Tyler.

Sept. 29, 2006.

Discretionary Review Refused
Feb. 7, 2007.

Rehearing Overruled March 5, 2007.

Stanley G. Schneider, Schneider & McKinney, P.C., Houston, Steven R. Rosen, Law Office of Steven Rocket Rosen, Houston, for appellant.

Donna R. Bennett, Dist. Atty's Office, Henderson County, Athens, for state.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

SAM GRIFFITH, Justice.

Adam Robert Lewis appeals his convictions for aggravated assault on a public servant and deadly conduct with a firearm. In four issues, Appellant contends that he was denied the effective assistance of counsel and that the trial court erred when

it failed to conduct a competency hearing on its own motion. We affirm in part and dismiss for want of jurisdiction in part.

## BACKGROUND AND PROCEDURAL HISTORY

In 2001, Henderson County constables John Floyd and Daner Stansberry attempted to serve a "mental health" warrant on Appellant. According to their testimony, Stansberry and Floyd approached the trailer, identified themselves as constables, and asked Appellant to come with them. Appellant declined and insisted that they did not have a warrant. They entered the trailer and Floyd asked Appellant to review their warrant. When Appellant did not respond, Stansberry walked into the back bedroom. Appellant was in an adjoining bathroom. He had reached his arm around the door and was pointing a pistol into the bedroom at Stansberry. Stansberry stepped back, and the gun was fired. The two men retreated from the trailer. Sometime later, the Smith County special weapons and tactics (SWAT) task force extricated Appellant from the trailer.

A Henderson County grand jury returned indictments against Appellant for two counts of aggravated assault on a public servant. A trial was held in April 2002, and Appellant pleaded not guilty. The jury found Appellant guilty of aggravated assault, as charged in one of the indictments, and deadly conduct with a firearm, as a lesser included offense of the second aggravated assault charge. The jury assessed punishment at twenty years and five years of imprisonment, respectively. In May 2002, Appellant filed a motion for new trial raising three complaints. In June 2002, a new attorney appeared for Appellant and filed an amended motion for new trial alleging six complaints including those previously alleged. A hearing was held and the State objected to the amended motion on the grounds that it was not

filed timely. The trial court allowed a hearing on both motions. No further evidence was adduced, and the trial court granted the motion for new trial after hearing the arguments of counsel.

The State appealed the granting of the motion for new trial. We reversed, holding that the grounds advanced in the first motion were without merit and that the court lacked jurisdiction to consider the second and untimely motion for new trial. *State v. Lewis*, 151 S.W.3d 213, 225 (Tex. App.-Tyler 2004, pet. ref'd) (op. on reh'g). Appellant then sought to appeal his conviction. He had not filed notice of appeal until well after the prescribed time, and we dismissed his appeal for lack of jurisdiction. *Lewis v. State*, Nos. 12–04–00372–CR, 12–04–00373–CR, 2004 WL 3153761, at *1 (Tex.App.-Tyler Dec.30, 2004, no pet.) (per curiam) (not designated for publication).

Appellant then applied for a writ of habeas corpus alleging that the attorney who filed the amended motion for new trial rendered ineffective assistance of counsel because notice of appeal was not filed in a timely fashion. The trial court recommended that relief be granted, and the court of criminal appeals granted the writ and allowed an out of time appeal. *Ex parte Lewis*, Nos. AP–75,234, AP–75,235, 2005 WL 2219038, at *1 (Tex.Crim.App. Sept.14, 2005) (per curiam) (not designated for publication). Appellant then filed notice of appeal and another motion for new trial. The State, contending that the granting of an out of time appeal did not allow for consideration of a motion for new trial, asked this Court to prohibit the trial court from considering or ruling on the motion for new trial. We denied the writ of prohibition, holding that the State had not shown that the trial court intended to act without jurisdiction. *In re State*, 180 S.W.3d 423, 427 (Tex.App.-Tyler 2005)

(orig. proceeding). Following our decision, Appellant withdrew his request for a hearing on the pending motion for new trial and proceeded with this appeal.

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first and second issues, Appellant contends that he received ineffective assistance of counsel because his attorney failed to present expert testimony regarding his mental status or mental health.

### *Applicable Law*

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). We review counsel's representation on the basis of the totality of the representation and not for isolated or incidental deviations from professional norms. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex.Crim.App.2006).

The second step requires the appellant to show prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim. App.1999). To establish prejudice, an appellant must show that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

We begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). As part of this presumption, we presume counsel's actions and decisions were reasonable and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption, which is ordinarily accomplished by presenting evidence regarding trial counsel's strategic decisions. *See id.; see also Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim.App.1998) (Record inadequate on direct appeal to evaluate whether trial counsel provided ineffective assistance of counsel).

### *Analysis*

■ Appellant complains that his trial counsel did not present evidence from a medical health expert at his trial. Appellant marshals portions of the record to suggest that he suffered from a mental illness and directs us to the recent decision of the court of criminal appeals in *Ex parte Briggs*, 187 S.W.3d 458 (Tex.Crim.App. 2005), where the court found that the applicant had received ineffective assistance of counsel. In *Briggs*, there was an affidavit from trial counsel stating that he did not hire an expert witness to prepare for trial or to testify at trial because his client's family did not provide him with money to hire an expert. *Id.* at 465–66. The court of criminal appeals held that this was no strategy at all and offered alternatives that counsel should have explored in light of his client's limited financial resources. *Id.* at 468.

In this case, Appellant did not present evidence of the strategic reasons for his attorney's decisions with respect to presenting expert testimony. This alone could be enough to resolve this matter. *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex.Crim.App.2003); *see also Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex.Crim.App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief

on an ineffective assistance claim on direct appeal."). The reasons for counsel's actions, however, are not difficult to discern from the record. There is no evidence that Appellant was insane or that he suffered from a significant mental illness. Appellant was evaluated by professionals at the Andrews Center shortly after he was taken into custody. He was not diagnosed with any mental illness and was returned to the jail. Additionally, Dr. Andrews, a clinical psychologist, conducted an exhaustive evaluation of Appellant's sanity and competence to stand trial. His report was requested by the district court in Navarro County where Appellant had felony charges pending, and the parties agreed to adopt and incorporate the report into the evidence of this case at a hearing held on March 15, 2002.

Dr. Andrews interviewed Appellant on two occasions and spoke with members of his family and his counsel. He concluded that "[n]o mental health, cognitive, or psychological problem appears to exist which would compromise [Appellant's] competency as long as he remains alcohol and drug free." He noted that the use of "chemical substances" could interfere with Appellant's ability to cooperate with his attorney and to control his behavior in the courtroom. Furthermore, he concluded that there were not "mental health, cognitive, or psychological problems which at the time of the alleged offense would have interfered with the defendant's ability to know right from wrong or to know what he was doing." Dr. Andrews concluded that substance abuse could "certainly have clouded the defendant's judgment and may be considered a mitigating circumstance in this alleged offense." Additionally, there was testimony from the nurse at the jail

that Appellant appeared to be intoxicated when he was first brought into the jail and that he exhibited bizarre behavior at that time. She testified that she had not seen a return of the bizarre behavior in the months after he had been incarcerated and that Appellant was able to speak with her coherently by the morning following his arrest.[1]

On the other hand, there is evidence that would cause an attorney representing Appellant to have inquired further about Appellant's mental condition. First, there is the application for court ordered temporary mental health services. This is a preprinted form that simply says that "the proposed patient is mentally ill and meets the criteria as set out in section 50 of the Texas Mental Health Code for court ordered temporary mental health services." This application is attested to by Glynn Lewis, Appellant's father, in which he also states that Appellant had threatened Glynn's life, had threatened his own life, had destroyed property, suffered from "real bad" mood swings, and was violent toward people around him.

Additionally, after Appellant filed a motion asking the trial court to reduce his bond, the trial court ordered that the Andrews Center evaluate him to determine if he needed any medication. Dr. Timothy J. Furlong, a staff psychiatrist at the Andrews Center and a medical doctor, wrote a letter to the court in which he noted that he observed no overt evidence of mental illness during the time of his evaluation and no "clear indication for psychiatric medication, based upon his self—report and my observations." Dr. Furlong did allow that it was possible that Appellant was mentally ill but "so highly defended psychologically that he can hide it or deny

---

1. Appellant was struck in the head with a rifle during his apprehension and may have suffered a concussion.

it to himself." He also wrote that it was possible that Appellant's drug use exacerbated an underlying psychotic illness or that he had sustained brain damage from "years of intravenous amphetamine abuse, which might explain some of the psychotic—like behaviors observed by his father even when [he] was apparently off drugs."[2]

Finally, Appellant's mother and father both testified that Appellant had periods of difficulty. His mother testified that she "would like to believe that anything that is wrong is all about drugs, but I don't know that." Appellant's father testified that Appellant was not himself the day he was arrested and that he had a mental health problem.

Given all of the evidence in the record, the course of action undertaken by his attorney was certainly within the wide range of effective assistance of counsel. Appellant's counsel was aware of the potential mental health issues in this case. Counsel had a report from a clinical psychologist concluding that Appellant did not suffer from a mental illness and another report that merely allowed for the possibility of mental illness or brain damage from the abuse of drugs. Furthermore, counsel indicated to the court that he had retained an expert to evaluate an insanity defense.[3]

Balanced against this is the evidence of Appellant's persistent use of methamphetamine. Presenting the available expert testimony—Appellant has not brought forward any additional expert testimony to support his claim—would have provided the jury with Appellant's own statements about his persistent use of an illegal substance. Because the available expert testimony would not have provided a defense, it was a reasonable decision not to use that testimony both because it was not helpful and to limit inquiry into Appellant's use of controlled substances.

Appellant has also failed to prove that he was prejudiced by his attorney's course of action. In *Briggs* the court of criminal appeals concluded that it is "highly likely that a jury would have returned with a 'not guilty' verdict" if the evidence adduced at the hearing on the habeas corpus had been introduced at a trial. *Id.* at 470. That standard is not met here because the proposed expert testimony would have been that Appellant was not mentally ill. Against that was only Appellant's father's conclusion that he was mentally ill. The father's conclusions are suspect because he did not know Appellant was using drugs. That taint carries over to the preliminary conclusions of Dr. Furlong which rested, at least in part, on the statement of Appellant's father that Appellant behaved erratically when he was not using drugs. That statement cannot be reconciled with Appellant's statement, given under oath, that he used drugs nearly every day.

Although Appellant does not make the argument formally, counsel can also be ineffective for failing to investigate or to present evidence in mitigation. *See, e.g., Rompilla v. Beard,* 545 U.S. 374, 378–79, 125 S.Ct. 2456, 2468–69, 162 L.Ed.2d 360 (2005); *Ex parte Woods,* 176 S.W.3d 224, 225–26 (Tex.Crim.App.2005). But counsel did present evidence in mitigation including Appellant's mother and father's assess-

---

**2.** This last conclusion appears to be based on incomplete information. Appellant's father believed that Appellant did not use drugs. Appellant testified under oath that he was an intravenous methamphetamine user and told the jury and Dr. Andrews that he had used drugs on a daily basis for more than a decade.

**3.** Appellant testified that he concurred in the decision not to advance an insanity defense and that he had never considered using such a defense.

ment of his mental condition and the testimony of the mother's divorce attorney about issues within the family. The available expert testimony, concluding that Appellant was not mentally ill, was not so helpful that the decision not to use it had the effect of denying Appellant's right to counsel. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (Ineffective assistance of counsel will be proven only upon a showing that the attorney made errors so serious that Appellant was denied his Sixth Amendment right to counsel.).

The evidence does not overcome the presumption that counsel made reasonable strategic choices. Appellant's suggestion that he was harmed by the failure to present expert testimony is merely speculation, especially when the experts whose opinions are in the record do not support the arguments he now advances. We overrule Appellant first and second issues.

### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

■ In his third issue, Appellant complains that his first appellate lawyer failed to provide effective assistance of counsel. Specifically, he argues that counsel should have argued that the trial court ruling granting a new trial could be sustained on the grounds advanced in the original motion for new trial.

Our jurisdiction to consider this claim is not immediately evident. Our jurisdiction is prescribed by the Texas Constitution and by statute. *See* TEX. CONST. art. V, § 6(a); TEX.CODE CRIM. PROC. ANN. art. 4.03 (Vernon Supp.2006). The right to appellate review in criminal matters is provided

by article 44.02 of the Texas Code of Criminal Procedure. This review is generally understood to be of the judgments of the trial courts as defined by article 42.01 of the Code of Criminal Procedure. *See State v. Sellers,* 790 S.W.2d 316, 321 n. 4 (Tex.Crim.App.1990).

■ More generally stated, we review "cases." *See* TEX. CONST. art. V, § 6(a); TEX.CODE CRIM. PROC. ANN. art. 4.03.[4] The term is undefined but the court of criminal appeals has held that, for appellate purposes, a "case" is the "aggregate of facts that resulted in a conviction for a single offense." *Callins v. State,* 726 S.W.2d 555, 557 (Tex.Crim.App.1986). The appellate rules conform to the understanding that our review is of the proceedings in the trial court. *See, e.g.,* TEX.R.APP. P. 33.1(a)(1) (As a prerequisite, the record must show that "the complaint was made to the trial court.").

■ There are, however, instances where we review postconviction matters that do not involve trial court action or inaction. For example, we review claims that counsel was ineffective during the time when a motion for new trial could have been filed. *See, e.g., Mallett v. State,* 65 S.W.3d 59, 67 (Tex.Crim.App.2001). Furthermore, under the procedure for frivolous appeals, we implicitly review the effectiveness of appellate counsel and order remand for appointment of new counsel and additional briefing when counsel has failed to raise an arguable ground for appeal. *See Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000); *Bledsoe v. State,* 178 S.W.3d 824, 826–28 (Tex.Crim.App.2005).[5]

---

**4.** This is not the only term used. *See* TEX.CODE CRIM. PROC. ANN. art. 44.02, 44.25 (Vernon Supp.2006) ("criminal action").

**5.** The habeas corpus procedure is the sole postconviction collateral attack for final felony convictions. *See Ex parte Adams,* 768 S.W.2d 281, 287 (Tex.Crim.App.1989); *McBride v. State,* 114 S.W.3d 556, 557 (Tex. App.-Austin 2002, no pet.). This general principle does not resolve the issue, however, because Appellant's conviction is not final un-

When the court of criminal appeals granted habeas corpus relief to Appellant, it ordered that the dates in this case be calculated, for purposes of the rules of appellate procedure, as if the conviction had been entered on the date of its mandate. *See Ex parte Lewis,* 2005 WL 2219038, at *1. Arguably, this places the decision of this Court into the aggregate of facts that resulted in the conviction.[6] But that calculation tool is a useful fiction to vindicate Appellant's right to appeal and does not make our previous decision an action of the trial court. In fact, our prior decision came during a time that the trial court did not have jurisdiction over this case. *See* TEX.R.APP. P. 25.2(g). Furthermore, this claim is not like the procedure for frivolous appeals or the motion for new trial practice in which we review a part of the case at the time it is active before us or during the time the appeal was being perfected.

 A reasonable understanding of our jurisdiction does not comprehend review of procedural due process claims arising from a previous appeal in the case. However, even if we have jurisdiction to consider this complaint, it is without merit. Counsel made the argument that Appellant now complains was not made, and we held that

the trial court could not grant the motion for new trial on the grounds advanced in the first motion for new trial. *Lewis,* 151 S.W.3d at 225 ("There is no merit to any of the three grounds asserted in the original motion for new trial."). Counsel was not ineffective, and our conclusion on the matter of the first motion for new trial is the law of this case. *See Granviel v. State,* 723 S.W.2d 141, 147 (Tex.Crim.App.1986). We dismiss Appellant's third issue for want of jurisdiction.[7]

### COMPETENCY HEARING

In his fourth issue, Appellant complains that the trial court failed to conduct a competency hearing on its own motion.

### Applicable Law

A defendant is presumed to be competent to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46.02 § 1A(b) (Vernon 2004).[8] A defendant is incompetent to stand trial if he does not have a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or a rational as well as a factual understanding of the proceedings against him. *Id.* art. 46.02(a).

 When the issue of competency is raised prior to trial, the trial court is

---

til this appeal is resolved. *See Ex parte Brown,* 662 S.W.2d 3, 4 (Tex.Crim.App.1983).

6. After all, Appellant did not have a "conviction" when the first appeal was brought to this Court because his motion for new trial had been granted. *See* TEX.R.APP. P. 21.9 (granting motion for new trial restores case to its position before the former trial).

7. Because we have dismissed rather than overruled it, it appears that Appellant may bring this claim by way of an application for writ of habeas corpus, if he has not waived it for failing to raise it in his first application. *See* TEX.CODE CRIM. PROC. ANN. art. 11.07 §§ 1, 4(a) (Vernon Supp.2006); *Ex parte Acosta,* 672 S.W.2d 470, 472 (Tex.Crim.App.1984).

Complaints about the inefficacy of appellate counsel are commonly brought through the habeas procedure. *See, e.g., Ex parte Robinson,* AP–75,485, 2006 WL 2520621 (Tex.Crim. App. August 30, 2006) (not designated for publication); *Ex parte Seals,* AP–75,486, 2006 WL 2520619 (Tex.Crim.App. August 30, 2006) (not designated for publication); *Ex parte Ramirez,* AP–75,487, 2006 WL 2520615 (Tex. Crim.App. August 30, 2006) (not designated for publication).

8. Article 46.02 of the Texas Code of Criminal Procedure was repealed effective January 1, 2004. *See* Act of April 30, 2003, 78th Leg., R.S., ch. 35, § 15, 2003 Tex. Gen. Laws 72. The article was continued in effect for proceedings initiated before its repeal. *Id.* § 16.

required to conduct a competency inquiry if there is any evidence suggestive of incompetency. *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex.Crim.App.2003). After the competency inquiry, the trial court is required to impanel a jury to decide the issue of competency if there is "some evidence" that the defendant lacks competence. *Id.* at 710–11; *see also* TEX.CODE CRIM. PROC. ANN. art. 46.02 § 4(a). Our review of a trial court decision not to impanel a jury is for an abuse of discretion. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim.App.1999). Furthermore, a trial court's factual determinations regarding a defendant's competency are entitled to "great deference." *McDaniel*, 98 S.W.3d at 713.

### Analysis

■■■ The trial court ordered a competency evaluation on December 14, 2001. This order was made in the context of a hearing to consider a reduction of bail. Another hearing was held on February 15, 2002. Dr. Andrews's report had been prepared but was not entered into evidence at that time. Appellant testified that he had no objection to the report being provided to the State and that Dr. Andrews had found him competent to stand trial. The court then ordered Appellant to be evaluated by Dr. Furlong to determine whether he needed any medication. On February 28, 2002, another hearing was held on the matter of Appellant's bail. The court indicated that it had seen Dr. Furlong's report and stated that the "incompetency issue has already been resolved." Later in the hearing, the prosecutor asked the court if it had received Dr. Andrews's report. The court had not received the report but ordered that it be filed and made a part of the record. The court further stated, "But I thought—it was my understanding we were going to rely on that for purposes of this trial." Appellant's counsel agreed that the report should be used "on the competency [issue]."

There was more discussion between Appellant's counsel and the trial court about the report at a hearing held on March 15, 2002, as follows:

COURT: It's my recollection, which may fail me, that he's charged with a case in Navarro County and the issue of competency was raised in that case and you're his counsel, correct.

[APPELLANT'S COUNSEL]: Yes, sir.

COURT: And y'all agreed—I don't know if it was just an informal agreement or a stipulation on the record, whether or not that competency evaluation would be used and relied on in this case, also.

COUNSEL: Your Honor, I believe what we agreed to was to make that available to the Court in this case, yes, sir.

COURT: For the Court to rely on that. So the issue of competency will not be raised, then, in this case?

COUNSEL: Your Honor, I don't expect it will at this time, no, sir, unless—it's my understanding competency can be raised at any time even into the trial.

COURT: I understand. As far as you now know, you feel like you don't need to raise that issue?

COUNSEL: That's correct, Your Honor.

On the basis of these reports, and after discussion with Appellant's counsel, the trial court decided not to impanel a jury to determine the issue of competence. Appellant now alleges that there was "some evidence" that required the court to order a jury trial on this issue on its own motion. Specifically, Appellant suggests the trial court was obligated to conduct a jury trial on the issue of competence because his initial arrest was initiated on the basis of a mental health warrant and because Dr.

Furlong's report stated, as quoted by Appellant, "It is not clear whether he, Adam, could cooperate with his attorney."

But the evidence that Appellant was arrested on a mental health warrant pertains to a time months before the trial court became involved in this matter. Assuming the trial court knew of it, such information might cause a cautious jurist to conduct an inquiry. Standing alone, however, the fact that a person had been arrested on a mental health warrant months before the trial court acquired jurisdiction is insufficient to trigger a requirement for a jury trial on the issue of competence.

The second piece of evidence is both misquoted and misleading. Dr. Furlong never made any written statements that Appellant might have difficulty cooperating with his attorney. Rather, Dr. Andrews made that statement in his report. The context is important, and we reprint the relevant paragraph here.

> Although the defendant provided statements indicating awareness of the charge he faces and the proceedings against him, *it was not clear from the interview whether he could cooperate with his attorney.* Doubt about his ability to cooperate was also expressed by his attorney when questioned by the examiner, and it was decided to conduct a second interview of the defendant with his attorney present. (Underscore added.)

Dr. Andrews followed up and met with Appellant and his attorney. He concluded that Appellant appeared to have a basic understanding of the nature of the charges and proceedings against him and appeared motivated to work with his attorney. Dr. Andrews wrote that Appellant had "no mental health, cognitive or psychological problems."

In sum, the only competent evidence Appellant advances to suggest that the trial court was required to hold a hearing on the matter of his competence is the fact that a mental health warrant had been issued for his arrest. The trial court was attentive to the mental health issues in this case and properly determined, after Appellant had been examined by two professionals, that a further hearing on the matter was unnecessary. We overrule Appellant's fourth issue.

### CONCLUSION

We are without jurisdiction to consider Appellant's third issue, and we *dismiss* that portion of the appeal. Having overruled Appellant's first, second, and fourth issues we *affirm* the judgments of the trial court.