**The STATE of Texas, Appellant,**

v.

**Adam Roberts LEWIS, Appellee.**

**Nos. 12–02–00193–CR, 12–02–00194–CR.**

Court of Appeals of Texas,
Tyler.

March 30, 2004.

Discretionary Review Refused
Nov. 10, 2004.

Donna R. Bennett, Athens, for State.

April A. Sikes, Navarro County Criminal Dist. Atty., Corsicana, Tonda L. Curry, Tyler, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION ON REHEARING

SAM GRIFFITH, Justice.

On January 30, 2004, we issued an opinion in this cause reversing the trial court's granting of Adam Roberts Lewis's motion for new trial. Appellee Lewis subsequently filed a motion for rehearing. We deny Lewis's motion for rehearing. We withdraw our previous opinion and corresponding judgment and substitute the following opinion and judgment on rehearing.

Adam Roberts Lewis, appellee, was found guilty by a jury of aggravated assault on a public servant and deadly conduct. The jury assessed punishment at twenty years of confinement and five years of confinement, respectively. The trial court granted Lewis's amended motion for new trial in each case. The State appeals from that order, contending in seven issues that the trial court was without authority to rule on the amended motion and abused its discretion in granting it. Because we agree the trial court was without authority to rule on the amended motion and there is no merit to the grounds asserted in the original motion for new trial, we reverse the trial court's order and remand these causes to the trial court for further proceedings.

### BACKGROUND

Lewis was charged by separate indictments with two counts of aggravated assault on a public servant alleged to have occurred when two constables attempted to serve a mental health warrant. The two cases were tried together. After hearing evidence, the jury found Lewis guilty of one count of aggravated assault on a public servant and the lesser included offense of deadly conduct. The jury assessed punishment at twenty years of imprisonment for the offense of aggravated

assault on a public servant and five years of imprisonment for the deadly conduct offense. The trial court pronounced sentence in accordance with the jury's verdict on April 17, 2002.

Trial counsel timely filed a motion for new trial on May 16, 2002. He alleged jury misconduct, insufficiency of the evidence, and unconstitutionality of the applicable statute. It was supported by counsel's affidavit and a copy of a jury questionnaire filled out by one of the jurors who heard Lewis's cases. That motion was set for hearing on June 27. On June 24, 2002, Lewis's newly retained counsel filed a motion to substitute counsel. On June 26, 2002, she filed a motion for leave of court to file an amended motion for new trial and her amended motion for new trial. The amended motion urged the three issues raised by trial counsel and three new issues. The amended motion included discussions regarding the fact that the mental health warrant was never executed, a competency evaluation had not been performed on Lewis,[1] and trial counsel did not pursue an insanity defense. The amended motion was supported by a copy of the warrant and copies of trial counsel's affidavit and the juror's questionnaire. The previously set hearing was held on the following day. The trial court granted leave to file the amended motion and immediately heard argument on the amended motion. The trial court granted the amended motion for new trial. The State exercised its right to appeal the trial court's ruling. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(3) (Vernon Supp.2004).

### TRIAL COURT'S AUTHORITY

■ In its first issue, the State contends the trial court was without authority to rule on the untimely filed amended motion for new trial. Citing Rule of Appellate Procedure 21.4, the State argues that the amended motion was untimely because it was not filed within thirty days of the date of the judgment. The State interprets the rule as not allowing the trial court to consider a late amendment or a late motion. Because the trial court lacked authority to grant the amended motion for new trial, the argument continues, the order is null and void. Further, Lewis has not shown good cause entitling him to file the late amended motion, has not shown his constitutional right to counsel is in conflict with a procedural rule, and has not shown how he has been harmed.

Lewis responds that the trial court correctly exercised its inherent authority to allow him to file the amended motion for new trial and no exception was required. He argues that, since Rule 21.4(b) provides for amending a motion for new trial without leave of court within thirty days after the date sentence is imposed, the trial court is impliedly authorized to grant leave of court to file an amendment after the thirty-day time period. Relying on *Morales v. State*, 587 S.W.2d 418 (Tex.Crim. App.1979), Lewis argues that his constitutional right to due process was violated because the issue of the validity of the mental health warrant and, by extension, the question of whether the officers had the right to be in his home, was never addressed at trial. He further argues that forcing him to proceed solely on the original motion for new trial, without being allowed to raise his claim of ineffective trial counsel, "effectively would violate [his] right to effective representation."

---

1. In his brief, Lewis refers to this issue as a complaint of ineffective assistance of counsel at trial. In her argument before the trial court, Lewis's new counsel alleged ineffective assistance by trial counsel. However, there is no reference to ineffective assistance of counsel in the amended motion for new trial.

Because these constitutional issues outweigh the statutory limitation of thirty days to file an amendment, the argument continues, the statute should be interpreted as allowing for amendment outside the thirty days with leave of court. Finally, citing *Adaire v. State*, 130 Tex.Crim. 1, 91 S.W.2d 367 (1936) (op. on reh'g), Lewis asserts that permitting the filing of an amended motion for new trial after the time for filing the original motion is discretionary with the trial judge. He contends the State has failed to meet its burden of proving the trial court abused its discretion in allowing Lewis's amended motion to be filed.

### Discussion

■ When the State appeals from an order granting a new trial, the proper standard of appellate review is abuse of discretion. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). The right to move for a new trial in a criminal case is purely statutory. *Drew v. State*, 743 S.W.2d 207, 223 (Tex.Crim.App.1987). The remedy must be pursued in the manner prescribed by statute. *Id.* The time for filing motions for new trial and amended motions for new trial in criminal cases is presently governed by Texas Rule of Appellate Procedure 21.4. *See* Tex.R.App. P. 21.4. However, in order to understand how the present Rule 21.4 is applied, we must review the history of this rule.

The subject matter of this rule was previously found in Article 40.05 of the Code of Criminal Procedure. The version in effect at the time *Adaire* was decided read as follows:

A new trial must be applied for within two (2) days after conviction; but for good cause shown, the Court may allow the motion to be made at any time before the adjournment of the term at which the conviction was had.

Act of 1935, 44th Leg., R.S., ch. 308, § 1, 1935 Tex. Gen. Laws 714 (amended 1951, 1965, 1981, repealed 1985) (current version at Tex.R.App. P. 21.4). Thus, at the time, the statute supported the holding in *Adaire* that whether an amended motion for new trial would be permitted to be filed after the time allowed by law for filing a motion for new trial is within the sound discretion of the trial court. *Adaire*, 91 S.W.2d at 368.

The 1965 version of Article 40.05 was similar:

A motion for new trial shall be filed within ten days after conviction . . . and may be amended by leave of the court at any time before it is acted on within twenty days after it is filed. . . . but for good cause shown the time for filing or amending may be extended by the court, but shall not delay the filing of the record on appeal.

Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 477 (amended 1981, repealed 1985) (current version at Tex.R.App. P. 21.4). The statute was amended again in 1981. The 1981 version expanded the time period for filing a motion, but deleted the phrase "for good cause shown" and did not provide for amendment after the initial thirty-day time period for filing.

(a) A motion for new trial, if filed, shall be filed prior to or within 30 days after the date the sentence is imposed or suspended in open court.

(b) One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within 30 days after the date the sentence is imposed or suspended in open court.

Act of June 1, 1981, 67th Leg., R.S., ch. 291, § 107, 1981 Tex. Gen. Laws 803, 804 (repealed 1985) (current version at Tex.

R.App. P. 21.4). Thus, by 1981, the statutory method for filing motions for new trial did not provide for any amendment of the motion after the thirty days, even with leave of court. The court of criminal appeals has recognized this as an intentional change of the former statute requiring the filing and all amending of motions for new trial within the thirty days and not thereafter. *Dugard v. State*, 688 S.W.2d 524, 530 (Tex.Crim.App.1985), *overruled on other grounds, Williams v. State*, 780 S.W.2d 802, 803 (Tex.Crim.App.1989). The effect of this change is that the trial judge no longer has the discretion to extend the time limits for filing motions or amended motions for new trial. *Drew*, 743 S.W.2d at 223.

Article 40.05 was repealed, effective September 1, 1986. Act of May 26, 1985, 69th Leg., R.S., ch. 685, § 4, 1985 Tex. Gen. Laws 2472, 2473. Also effective September 1, 1986, the court of criminal appeals and supreme court adopted Texas Rule of Appellate Procedure 31, regarding motions for new trial. That rule provided in pertinent part:

> Before a motion or an amended motion for new trial is overruled it may be amended and filed without leave of court within 30 days after date sentence is imposed or suspended in open court.

Tex.R.App. P. 31(a)(2). Pursuant to revisions made to the rules in 1997, the subject matter of former Rule 31(a)(2) is now found in Rule 21.4(b) which provides:

> Within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial, a defendant may, without leave of court, file one or more amended motions for new trial.

Tex.R.App. P. 21.4(b).

These various versions of the rule providing the timetable for filing amended motions for new trial have been construed uniformly. Former Rule 31 has been interpreted consistently with the 1981 version of Article 40.05. *Beathard v. State*, 767 S.W.2d 423, 433 (Tex.Crim.App.1989). Rule 21.4(b) has been held to present no substantive changes from former Rule 31(a)(2). *Mercier v. State*, 96 S.W.3d 560, 562 (Tex.App.-Fort Worth 2002, no pet.). Some cases involving application of Rule 21.4(b) apply the law set out in *Dugard*, which addressed the 1981 version of former Article 40.05. *See Andrews v. State*, 106 S.W.3d 402, 406 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd); *Rangel v. State*, 972 S.W.2d 827, 838 (Tex.App.-Corpus Christi 1998, pet. ref'd). Thus, Rule 21.4 does not change prior law and also requires the filing of amended motions for new trial within the thirty days and not thereafter. *Dugard*, 688 S.W.2d at 530.

■ Further, Lewis's argument that the wording of Rule 21.4 allows an interpretation that the trial judge may grant leave to amend after the thirty-day period has been considered and rejected by the Fort Worth Court of Appeals. *See Mercier*, 96 S.W.3d at 562. We agree with the Fort Worth court. The plain meaning of the rules, especially in light of their history, is that the trial court has no discretion to allow an amendment after the thirty-day period. Accordingly, no amended motion for new trial may be filed after the thirty-day period, even with leave of court. *Drew*, 743 S.W.2d at 222–23.

■ We turn now to Lewis's argument that his allegations of constitutional violations override the procedural requirements of the rule. Lewis relies on *Morales* in support of his argument. Citing *Whitmore v. State*, 570 S.W.2d 889 (Tex. Crim.App.1977) (op. on reh'g), *Morales* held that a statute governing the time for filing motions for new trial cannot be ap-

plied so as to deprive an accused of a right secured by the constitution. *Morales,* 587 S.W.2d at 421. The court of criminal appeals discussed this holding and the *Whitmore* opinion at length in *Drew.* There, the court pointed out that *Whitmore* was decided at a time when the applicable rule allowed out-of-time filings "for good cause shown." *Drew,* 743 S.W.2d at 224. Further, the mere mention of constitutional rights is not sufficient since constitutional rights may be waived like other rights. *Id.* at 225. But most important, the claimed deprivation of constitutional rights cannot confer jurisdiction upon a court where none exists. *Id.*

■ The statutory provisions for filing motions for new trial and amended motions for new trial are mandatory and exclusive and must be complied with in all respects. *Id.* at 223. The court in exercising its particular authority is a court of limited jurisdiction. *Id.* When there is no jurisdiction, the power of the court to act is as absent as if it did not exist. *Id.* Accordingly, a late amended motion for new trial fails to vest the trial court with jurisdiction over the issues included in the amended motion. *Beathard,* 767 S.W.2d at 433; *Drew,* 743 S.W.2d at 223; *Andrews,* 106 S.W.3d at 406; *Licon v. State,* 99 S.W.3d 918, 926 (Tex.App.El Paso 2003, no pet.); *Mercier,* 96 S.W.3d at 562; *Port v. State,* 798 S.W.2d 839, 847 (Tex.App.-Austin 1990, pet. ref'd). Because the trial court had no jurisdiction to hear Lewis's late amended motion for new trial, the trial court abused its discretion in granting the amended motion. We sustain the State's first issue.

In its second, third, and fourth issues, the State asserts the trial court abused its discretion in granting the amended motion for new trial on the three grounds initially raised in the amended motion. Those grounds include allegations of improper execution of the mental health warrant, the failure to obtain a mental evaluation of Lewis, and failure to present Lewis's mental health condition to the jury. As explained above, the amended motion containing these issues was not timely filed and therefore not properly before the trial court. Therefore, granting the motion on any of these three grounds would be an abuse of discretion. We sustain issues two, three, and four.

### JURY MISCONDUCT

■ In its fifth issue, the State contends the trial court erred in granting the motion for new trial on the ground of jury misconduct. The State complains that the motion was not supported by an affidavit by a juror and that the rules of evidence prohibit testimony by a juror regarding matters occurring during deliberations.

In his original motion for new trial, Lewis alleged jury misconduct which he based on a juror's answers to a questionnaire sent to jurors by his first trial attorney. The motion was supported by the attorney's affidavit explaining the origin of the questionnaire and opining that it indicates "the jury discussed and considered parole and good time credit in reaching their punishment verdict." Also attached was a copy of the questionnaire.

Rule of evidence 606(b) prohibits jurors from testifying as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to the verdict. TEX.R. EVID. 606(b). The rule allows a juror to testify regarding only whether any outside influence was improperly brought to bear upon any juror or to rebut a claim that the juror was not qualified to serve. *Id.* Evidence of any discussion of parole and good time credit by the jury falls within the rule's prohibition.

The attorney's affidavit and the jury questionnaire do not provide evidence of outside influence. Thus, the trial court could not appropriately grant Lewis's motion for new trial on the ground of jury misconduct as alleged in the motion. *See Hines v. State*, 3 S.W.3d 618 (Tex.App.-Texarkana 1999, pet. ref'd) (Holding that jurors may testify only to whether any outside influence was brought to bear upon a juror and a juror's statements made during deliberations about the effect of parole are not an outside influence). We sustain the State's fifth issue.

## SUFFICIENCY OF THE EVIDENCE

In its sixth issue, the State asserts the trial court erred in determining the evidence was legally and factually insufficient to support the jury's verdict. It argues that the record supports the trier of fact's findings, beyond a reasonable doubt, that Lewis committed the offenses of aggravated assault on a public servant and deadly conduct.

In ruling upon a motion for new trial based upon legal insufficiency of the evidence, the trial court must use the same standard of review as that used by appellate courts. *State v. Savage*, 905 S.W.2d 272, 274 (Tex.App.-San Antonio 1995), *aff'd*, 933 S.W.2d 497 (Tex.Crim.App.1996). The trial court must decide, after reviewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* When a motion for new trial challenges the sufficiency of the evidence to support a jury's finding, the trial court cannot weigh the evidence and judge the credibility of the witnesses. *State v. Charlton*, 847 S.W.2d 443, 446 (Tex.App.-Houston [1st Dist.] 1993, no pet.). The grant of a new trial on the basis of legally insufficient evidence is equivalent to an acquittal. *Rodriguez v. State*, 852 S.W.2d 516, 519 (Tex.Crim.App.1993).

Under a factual sufficiency standard, the court conducts a neutral review of all the evidence, both for and against the jury's verdict, and determines whether the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Manns v. State*, 122 S.W.3d 171, 174 (Tex.Crim.App.2003). The reviewing court compares the evidence that tends to prove a material disputed fact with evidence that tends to disprove it. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). While a reviewing court has some authority to disregard evidence that supports the verdict, it must be appropriately deferential so as to avoid substituting its own judgment for that of the fact finder. *Ortiz v. State*, 93 S.W.3d 79, 87–88 (Tex.Crim.App.2002), *cert. denied*, 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003). The reviewing court should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Id.* A determination that a jury's verdict is factually insufficient is only appropriate when the evidence is so weak as to be clearly wrong or manifestly unjust or if the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *Zuliani v. State*, 97 S.W.3d 589, 593 (Tex.Crim. App.2003); *Johnson*, 23 S.W.3d at 11.

A person commits the offense of aggravated assault on a public servant if he uses a deadly weapon to intentionally or knowingly threaten another with imminent bodily injury when the actor knows the person threatened is a public servant who is lawfully discharging an official duty. TEX. PEN.CODE ANN. § 22.02(a)(2), (b)(2) (Vernon Supp.2004). The actor is presumed to

know the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *Id.* at § 22.02(c). A gun is a deadly weapon per se. TEX. PEN.CODE ANN. § 1.07(a)(17)(A) (Vernon Supp.2004); *Thomas v. State,* 821 S.W.2d 616, 618 (Tex. Crim.App.1991) (en banc). A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals. TEX. PEN.CODE ANN. § 22.05(b)(1) (Vernon 2003).

On the morning of November 6, 2001, Henderson County Constable Daner Stanberry went to Lewis's house at the request of Lewis's family. Stanberry attempted to get Lewis out of the house so he could go with his family. Lewis, who was very angry, noted that Stanberry did not have a warrant. He would not leave the residence or talk to Stanberry. Part of the reason the family called Stanberry is because he knows Lewis. Stanberry testified that he has known Lewis and his family for a long time. Lewis already knew who Stanberry was because they have had a dozen separate conversations and Stanberry had transported Lewis to the Tyler Behavioral Health Center in the past.

In the early afternoon on that same day, Henderson County Constable John Floyd was called to obtain a mental health warrant for Lewis and transport him to the Andrews Center for evaluation. When he reached Lewis's residence, Constable Stanberry and two Brownsboro police officers were already there. All four peace officers were wearing uniforms and driving marked patrol cars. Floyd and Stanberry knocked on the front door and identified themselves. Floyd said he was with the constable's office and Stanberry said, "[T]his is Daner." He told Lewis they had

a warrant to take him to the Andrews Center. They received no answer. After about five minutes, they pushed open the front door and went inside. Floyd again identified himself as being with the constable's office. Stanberry called out to Lewis identifying himself by his first name and told him they had a warrant. They did not see Lewis, but he yelled from a back bedroom and told them to get out of his house. Lewis commented that they did not have time to get a warrant. Floyd described Lewis as agitated and angry. Floyd said Lewis seemed to know Stanberry.

The officers went down the hall to the bedroom. Stanberry took one step inside the bedroom and he saw Lewis's arm come around the doorway from the bathroom holding a gun. Stanberry backed out of the bedroom. The officers heard one gun shot and saw smoke from inside the bedroom. They left the house at that time and called for backup. Later that day, Lewis was assisted out of the house by members of Tyler's SWAT team.

The record shows that Stanberry and Floyd were public servants lawfully discharging an official duty. That is, they were peace officers attempting to serve a mental health warrant. Lewis argues that questions regarding whether the officers had the lawful right to enter his home under the mental health warrant, whether it was a valid warrant, and why it was never executed have been left unanswered and, therefore, the State did not prove the officers were lawfully discharging an official duty. The warrant was introduced at trial with no objection. It shows on its face that the officers had the right to be on Lewis's property. Lewis made no attempt at trial to prove it to be invalid. The record shows that the officers were unable to take Lewis to a mental health facility as directed by the warrant because Lewis was arrested for aggravated assault. The

**222**

record also shows, however, that the issue of Lewis's competency and mental health was addressed extensively prior to trial. The fact that the mental health warrant was never executed and the reason it was not executed are inapposite to the issue of the sufficiency of the evidence to prove aggravated assault and deadly conduct. The State proved that Stanberry and Floyd were public servants lawfully discharging an official duty.

The officers arrived in marked patrol units, were wearing uniforms, and verbally identified themselves. This would seem sufficient to prove that Lewis knew they were public servants lawfully discharging an official duty. However, Lewis argues that, since no one testified that he had visual contact with the officers, the evidence was insufficient to show he knew he was shooting at police officers. He argues that the statutory presumption that a defendant knows someone is a public servant when the public servant wears a uniform or badge presupposes that the defendant sees the public servant. On this record, we need not apply the presumption. Both officers testified that they identified themselves when they knocked on the door and entered the residence. Floyd specifically said he was with the constable's office. Stanberry identified himself by name. They told Lewis why they were there. Stanberry testified that he had known Lewis and his family for years, had a dozen conversations with Lewis, and had transported him to a mental health facility in the past. Stanberry had been to Lewis's residence earlier the same day, with members of Lewis's family. At that time, Lewis told him to leave since he had no warrant. When Stanberry and Floyd were at Lewis's residence in the afternoon, Lewis told them they had not had time to get a warrant. There is sufficient evidence in the record to show that Lewis knew he was talking to law enforcement officers.

Lewis argues that there is insufficient evidence to show he had formed the intent to commit aggravated assault or that he had the mental capacity to form such intent. He argues that the fact that the officers were attempting to serve a mental health warrant should alert the parties that Lewis may not have the capacity to form intent. The jury was free to draw reasonable inferences from the fact that a judge had issued a mental health warrant. *Dumas v. State*, 812 S.W.2d 611, 615 (Tex. App.-Dallas 1991, pet. ref'd). However, while the question of Lewis's capacity was raised in pretrial proceedings, and his attorney filed notice of his intention to present the insanity defense, evidence on this issue was not presented to the jury. Lewis's intent to commit the offense can be inferred from his actions. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995). He discharged a gun, which is a deadly weapon per se, while pointing it in the direction of two officers there to serve a warrant.

We conclude that a rational trier of fact could have found the essential elements of the offenses of aggravated assault on a public servant and deadly conduct. *Savage*, 905 S.W.2d at 274. We note also that, since the trial court did not acquit Lewis, it apparently did not determine the evidence to be legally insufficient. *See Rodriguez*, 852 S.W.2d at 519. Further, the proof of guilt is neither so obviously weak as to undermine confidence in the jury's determination nor outweighed by contrary proof. *Manns*, 122 S.W.3d at 174. The evidence is legally and factually sufficient to support the jury's verdict. Granting a new trial on the basis of legal or factual sufficiency would be an abuse of discretion. We sustain the State's sixth issue.

*CONSTITUTIONALITY OF SECTION 22.02(C)*

In its seventh issue, the State asserts the trial court abused its discretion in determining that Section 22.02(c) of the Penal Code is unconstitutional as alleged in Lewis's original motion for new trial. The State argues that the presumption in that section is permissible and rebuttable. Further, to prove its case, the State did not rely strictly on the presumption. It relied on the evidence that the officers verbally identified themselves, Lewis knew Stanberry personally, and Lewis stated that Stanberry did not have time to get a warrant.

In his original motion for new trial, without naming a specific constitutional provision, Lewis asserted that Section 22.02(c) is unconstitutional because it shifts the burden of proof to the defendant by presuming an element of the offense against the defendant. He further argued that section is unconstitutional as applied because there was no evidence he had visual contact with the complaining witnesses.

Section 22.02(c) of the Penal Code provides that the person committing aggravated assault is presumed to have known the person assaulted was a public servant if the person assaulted was wearing a distinctive uniform or badge indicating the person's employment as a public servant. TEX. PENAL CODE ANN. § 22.02(c). With respect to a presumption of fact to be submitted to the jury and the specific element to which it applies, Section 2.05 of the Penal Code requires the court to instruct the jury (1) that the facts giving rise to the presumption must be proven beyond a reasonable doubt; (2) that if so proven, the jury may find the presumed element exists, but is not bound to do so; (3) that the State must prove beyond a reasonable doubt each other element of the offense; and (4) that if the jury has a reasonable doubt as to existence of the facts giving

rise to the presumption, it fails and is not to be considered for any purpose. TEX. PEN.CODE ANN. § 2.05 (Vernon 2003).

■■■ Presumptions are evidentiary devices. *Willis v. State,* 790 S.W.2d 307, 309 (Tex.Crim.App.1990) (en banc). A mandatory presumption compels the jury to find an essential element of the offense upon proof of a basic fact or requires the accused to present evidence to rebut the presumption. *Id.* Mandatory presumptions are unconstitutional because they lessen the State's required burden of proof. *Id.* By contrast, a permissive presumption allows, but does not require, the trier of fact to infer the elemental fact or ultimate fact from the predicate evidentiary fact. It places no burden on the accused to refute or disprove the elemental fact once the predicate facts have been established. *Id.* at 310. When a trial court gives a Section 2.05 instruction in a charge containing a presumption, that presumption will be construed as permissive. *Id.*

Here, the court's charge set out the elements of aggravated assault on a public servant and stated the presumption. However, the instructions required by Section 2.05 were not included in the charge. Lewis never complained of this omission.

■■■ Without the Section 2.05 instruction, the charge contains an unconstitutional, mandatory presumption. *Id.* If the defendant does not object to error in the jury charge, he must show the error was fundamental in order to complain about it on appeal. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (en banc) (op. on reh'g). Fundamental error in the jury charge is error that is so egregious and causes such harm as to deprive the accused of a fair and impartial trial. *Id.* To determine if Lewis suffered egregious harm, we consider (1) the entire

charge, (2) the state of the evidence, including contested issues, (3) arguments of counsel, and (4) any other relevant information. *Id.*

First, we consider the entire jury charge. The charge stated the elements of the offense and defined pertinent terms. It instructed the jury that Lewis is presumed innocent and it must find Lewis guilty beyond a reasonable doubt or acquit him. It specifically stated that the burden of proof rests upon the State throughout the trial and never shifts to the defendant. It explained that the State must prove each and every element of the offense charged beyond a reasonable doubt. These general instructions do not remedy the error in the charge. *See Francis v. Franklin*, 471 U.S. 307, 319–20, 105 S.Ct. 1965, 1974, 85 L.Ed.2d 344 (1985).

Next, we consider the state of the evidence. This factor focuses on whether the jury charge error relates to a contested issue. *See Hutch v. State*, 922 S.W.2d 166, 173 (Tex.Crim.App.1996) (en banc). The charge error goes to the element of Lewis's knowledge of the complainants' status as public servants, a contested issue. The record shows that there were three marked patrol cars in front of Lewis's residence. Four uniformed law enforcement officers were on his property, two of whom entered his home.

In her closing argument, the prosecutor addressed the evidence before the jury on the issue of whether Lewis knew Stanberry and Floyd were police officers. She reminded the jury that Stanberry, who had been at Lewis's house earlier that day, knew Lewis. She suggested it was a reasonable deduction from the evidence that Lewis looked out the window to see who had driven up to his house when the marked patrol units arrived. She said the officers were in uniform and identified themselves as constables there to serve a warrant. Further, she reminded the jury that Lewis responded by telling the officers they did not have time to get a warrant. The prosecutor never told the jury they were entitled to presume that Lewis knew Stanberry and Floyd were public servants because they were wearing uniforms.

Lewis argues that the presumption cannot be applied, and therefore the State failed to prove this element, because there is no proof that he saw the officers, their uniforms, or badges. First, there was no proof that Lewis did not see the officers. The officers testified that they did not see Lewis. However, that does not affirmatively prove Lewis did not see them. More importantly, the statute does not require the defendant to see the officers in order to know they are public servants. It merely requires knowledge. The State is left with the option of proving Lewis knew that Stanberry and Floyd were public servants based on other evidence.

Considering the evidence, arguments of counsel, and all relevant information, the overwhelming weight of the evidence shows the facts giving rise to the presumption. *See Webber v. State*, 29 S.W.3d 226, 237 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Based on this record, we conclude the jury could not reasonably harbor uncertainty on the issue of knowledge of the complainants' status as public servants. *See Bellamy v. State*, 742 S.W.2d 677, 686 (Tex.Crim.App.1987). Accordingly, egregious harm has not occurred. If the trial court granted Lewis's motion for new trial on the basis of the unconstitutionality of Penal Code Section 22.02(c), it abused its discretion. We sustain the State's seventh issue.

## CONCLUSION

Lewis's amended motion for new trial was not timely. The rules do not allow

untimely amended motions for new trial. Therefore, the trial court was without jurisdiction to entertain the amended motion and its ruling is null and void. The three grounds alleged for the first time in the late amended motion were not properly before the trial court and cannot support a new trial. There is no merit to any of the three grounds asserted in the original motion for new trial. We *reverse* the trial court's order granting the amended motion for new trial and *remand* these causes to the trial court for further proceedings.