NO.
12-06-00128-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

MICHAEL
EDMOND BAILEY,     §                      APPEAL FROM THE 273RD

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      SABINE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Appellant
Michael Edmond Bailey was convicted of murder and sentenced to ninety-nine
years of imprisonment with a fine of $10,000.00.  In six issues, Appellant appeals his
sentence.  We affirm.

 

Background

            On May 27, 2005, Appellant drove to
the home of Tommy Arnold.  Appellant then
persuaded Arnold to leave with him and travel to a cemetery in the woods.  Once at the cemetery, Appellant confronted
Arnold with allegations that Arnold had been making sexual advances toward
M.O., Appellant’s sixteen year old sister. 
Appellant then shot Arnold, once in the mid-section and once in the
face.  

            After the shooting, Appellant set
out upon a plan to secretly dispose of Arnold’s body by cutting him to
pieces.  Seeking aid in his endeavor, he
contacted his mother’s boyfriend, Tony Martin. 
Martin refused to help Appellant. 
Later, Appellant confessed to his mother, Barbara Orris.  Martin and Orris, after discussing the matter
between themselves, notified the Sabine County Sheriff’s Department.

            Appellant was charged with one count
of murder.[1]  Appellant pleaded guilty and was sentenced by
a jury to ninety-nine years of imprisonment with a fine of $10,000.00.  This appeal followed.

 

Refusals to Grant a Mistrial

            In his first and third issues,
Appellant contends that the trial court abused its discretion by denying two
motions for mistrial that followed trial testimony regarding Appellant’s
membership in the Aryan Brotherhood and questions by the prosecutor in which
the prosecutor accused Appellant of breaking into his mother’s gun cabinet to
steal the murder weapon.

            Generally, in order for an appellant
to argue on appeal that a trial court erred by allowing a party to pose a
specific question to a testifying witness or party, he must have preserved the
error at trial by making a proper objection and securing a ruling on the
objection.  See Ethington v.
State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); see also Tex. R. App. P. 33.1 (describing the necessary
steps to preserve error in Texas courts). 
An objection is “proper” where counsel specifically states the basis for
the objection or the particular ground is apparent from the context. Ethington,
819 S.W.2d at 858.  Where a trial court
refuses to rule on an objection, an objection to the refusal is sufficient to
preserve error.  Id.  An objection should be made as soon as the
ground for objection becomes apparent.  Lagrone v. State, 942 S.W.2d 602, 618
(Tex. Crim. App. 1997).  If a party fails
to object until after an objectionable question has been asked and answered,
and he can show no legitimate reason to justify the delay, his objection is
untimely and error is waived.  Id.

            Both instances complained of by
Appellant involve instances where one or more of the prosecutor’s questions had
been asked and answered before any objection was made.  Appellant has made no attempt on appeal to
offer a reason to justify his delay in objecting to the questions.  Further, no legitimate reason is apparent in
the record.  Appellant’s objections and
subsequent motions for mistrial were, thus, untimely, and he has failed to
preserve error.  See id.

            We overrule Appellant’s first and
third issues.

Factual Sufficiency of the Evidence

            In his second issue, Appellant challenges
the factual sufficiency of the evidence supporting the jury’s failure to find
that, at the time of the murder, he was under the immediate influence of sudden
passion arising from an adequate cause. 
Section 19.02(d) of the Texas Penal Code provides that

 

[a]t the punishment stage of a trial, the defendant
may raise the issue as to whether he caused the death under the immediate
influence of sudden passion arising from an adequate cause.  If the defendant proves the issue in the
affirmative by a preponderance of the evidence, the offense is a felony of the
second degree.

 

 

Tex. Penal Code Ann. § 19.02(d) (Vernon
2003).  If a defendant does not meet this
burden, the offense of murder is a felony of the first degree.  Id. § 19.02(c).

Standard
of Review

            The jury’s failure to find that
Appellant was under the immediate influence of sudden passion arising from an
adequate cause constituted a nonfinding on an issue in which Appellant, as the
defendant, carried the burden of proof.  See
id. § 19.02(d).  When we
review jury nonfindings of this type for factual sufficiency, the standard of
review is whether, after considering all the evidence relevant to the issue at
hand, the judgment is so against the great weight and preponderance of the
evidence as to be manifestly unjust.  See
Meraz v. State, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict, see Clewis v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996), our evaluation should not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.  See Santellan v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997). 
When there is conflicting evidence, the jury’s verdict on such matters
is generally regarded as conclusive.  See
Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996,
pet. ref’d).  In this regard, we cannot
declare that a conflict in the evidence justifies a new trial simply because we
may disagree with the jury’s resolution of the conflict.  See Watson v. State, 204 S.W.3d
404, 417 (Tex. Crim. App. 2006).

Discussion

            The evidence showed that Appellant
and Arnold had been friends before the murder. 
Arnold, who was twenty-four years old, had often spent the night at
Appellant’s home, where he was allowed to sleep in the same bed as M.O.,
Appellant’s sixteen year old sister. 
During one or more of these occasions, Arnold made sexual advances
toward M.O., who rejected these advances. 
Appellant, suspicious that Arnold might have a sexual interest in M.O.,
confronted Arnold, and the two argued.

            On May 27, 2005, Appellant’s
suspicions were confirmed when he learned of Arnold’s advances toward M.O.  Appellant; his friend, Earnest Brown; and
M.O. agreed to “go find” Arnold so that Appellant could “beat him up.”  The group first went to obtain illegal drugs,
which they ingested.  The group then
traveled to Arnold’s home, using a rental car known by Appellant to have a
pistol under one of the seats.  After
reaching Arnold’s home, Appellant convinced Arnold to leave with them, driving
him to a cemetery in the woods. 

            When they got to the cemetery,
Appellant and Arnold exited the rental car. 
At first, the two engaged in a casual conversation during which
Appellant revealed the pistol to Arnold. 
Eventually, Appellant pointed the pistol at Arnold and announced, “If
you f**k with my family  . . .  I’m gonna kill you.”  Then, using the pistol, which he knew to be
loaded, Appellant shot Arnold in the mid-section from approximately seven to
eight feet away.  Arnold stated, “I don’t
know what’s going on, what’s wrong Michael 
. . .  [?]” and fell to the
ground, screaming in pain.  Appellant
then approached Arnold, slowly pointed the pistol at Arnold’s head, and shot
him in the face at close range to make sure he was dead.

            Afterward, Appellant ordered Brown
to help him put Arnold’s body in the trunk of the rental car.  On the drive away from the cemetery,
Appellant told Brown and M.O. that he planned to cut Arnold’s body into pieces
to dispose of it.  He drove to his
grandmother’s home to get a tarp to cover the body.  He then drove to home where he lived with his
mother and placed the body on the floor inside the home.  Appellant was apprehended by law enforcement
before he was able to cut up and dispose of the body.

            To reduce the charged offense to a
second degree felony, Appellant had the burden to prove, by a preponderance of
the evidence, that at the time of the murder, he was under the immediate
influence of sudden passion arising from an adequate cause.  See
Tex. Penal Code Ann. §
19.02(d).  “Sudden passion” is defined in
the Penal Code as “passion directly caused by and arising out of provocation by
the individual killed or another acting with the person killed which passion
arises at the time of the offense and is not solely the result of former
provocation.”  Id. §
19.02(a)(2) (emphasis added).  “Adequate
cause” is defined as a “cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to
render the mind incapable of cool reflection.” 
Id. § 19.02(a)(1).  

            Appellant testified that he had not
intended to shoot Arnold, only to threaten him. 
He claimed that he did not know there was a pistol in the rental car and
had merely happened to find it on the way to Arnold’s home.  According to Appellant, it was Arnold’s
decision to drive to the cemetery. 
Appellant claimed that, once they began talking, Arnold admitted to
Appellant that he had attempted to have sex with sixteen year old M.O. and that
Arnold stated it was M.O.’s fault for “flirting” with him.

            At least two of these statements
were controverted by other testimony. 
Brown testified that it was, in fact, Appellant who chose to drive to
the cemetery.  Also, Appellant’s mother,
Orris, testified that Appellant knew the pistol was in her rental car.  The jury was free to disregard Appellant’s
version of his conversation with Arnold at the cemetery.  See Jones v. State, 944 S.W.2d
642, 648-49 (Tex. Crim. App. 1996).

            The jury could have reasonably
inferred from the remaining evidence that Appellant had planned to murder
Arnold and that neither shot had been fired by Appellant as the result of
sudden passion.  The evidence showed that
Appellant fortified himself with drugs before leaving his home and that he had
enlisted Brown and M.O. to assist him in his plan.[2]  Appellant chose a cemetery in the woods to
perform the act and also armed himself with a loaded pistol.  Once at the cemetery, Appellant confronted
Arnold and then shot him.  He shot Arnold
a second time, this time in the face, to ensure that Arnold was dead.[3]  Afterwards, he embarked upon a plan to
dispose of the body, but was apprehended before he could bring this plan to
fruition.            

            Absent Appellant’s testimony about
his conversation with Arnold, there was no direct evidence of a passion that “[arose]
at the time of the offense and [was] not solely the result of former
provocation.”  See Kelley v. State,
968 S.W.2d 395, 400 (Tex. App.–Tyler 1998, no pet.) (“If the jury found there
was no provocative conduct, or at least none occurring at the time of the
offense, then there was no finding of cause at all, much less ‘adequate cause.’”).  Instead, the remaining direct evidence showed
that Appellant had been aware of Arnold’s sexual advances for some time, and,
thus, had time to deliberate about his actions.  See McKinney v. State, 179 S.W.3d
565, 570 (Tex. Crim. App. 2005).  

            After a neutral review of all the
evidence, both for and against the jury’s nonfinding of sudden passion, we
conclude that the nonfinding was not so against the great weight and
preponderance of the evidence as to be manifestly unjust.  See id.; Kelley,
968 S.W.2d at 400.  

            We overrule Appellant’s second
issue.

 

Refusal to Grant a New Trial

            In his fifth issue, Appellant argues
that the trial court committed reversible error by denying his supplemental
motion for a new trial.  Appellant
challenges only the trial court’s denial on the ground contained in his
supplemental motion for new trial, not the grounds contained in his original
motion for new trial.  Because the
supplemental motion contained a wholly new ground, it was actually an
amendment, and not a mere supplement, to the original motion.  Cf. Mallet v. State, 9 S.W.3d 856,
865 (Tex. App.–Fort Worth 2000, no pet.) (treating untimely filed affidavits as
an amendment to the defendant’s motion for new trial).  We must, therefore, determine whether this
amendment was timely.

            The right to move for a new trial in
a criminal case is purely statutory.  State
v. Lewis, 151 S.W.3d 213, 217 (Tex. App.–Tyler 2004, pet. ref’d)
(citing Drew v. State, 743 S.W.2d 207, 223 (Tex. Crim. App.
1987)).  Such a motion must be pursued in
the manner prescribed by statute.  Id.
The time for filing motions for new trial and amended motions for new trial in
criminal cases is governed by Texas Rule of Appellate Procedure 21.4.  See Tex.
R. App. P. 21.4.  We have
previously interpreted Rule 21.4 to preclude a defendant from amending a motion
for new trial later than thirty days after the trial court imposes or suspends
that defendant’s sentence in open court. 
Lewis, 151 S.W.3d at 218. 
A trial court is powerless to extend this deadline by granting leave of
court.  Id. (citing Drew,
743 S.W.2d at 222-23).

            The statutory provisions for filing
motions for new trial and amended motions for new trial are mandatory and
exclusive and must be complied with in all respects.  Lewis, 151 S.W.3d at 219 (citing Drew,
743 S.W.2d at 223).  The trial court has
limited jurisdiction when exercising its particular authority to rule on
motions for new trial.  Id.  A late amended motion for new trial fails to
vest the trial court with jurisdiction over the issues included in the amended
motion.  Lewis, 151 S.W.3d
at 219 (citing Beathard v. State, 767 S.W.2d 423, 433 (Tex. Crim.
App. 1989)). 

            In this case, the trial court
imposed Appellant’s sentence in open court on February 28, 2006.  Appellant filed his amendment, designated as
a supplemental motion for new trial, on May 12, 2006 and thus filed it
untimely. See Tex. R. App. P.
21.4; Lewis, 151 S.W.3d at 218. 
Therefore, the trial court lacked jurisdiction to rule on the new ground
contained in his supplemental motion.  See
Lewis, 151 S.W.3d at 219.  Because the trial court lacked jurisdiction
to hear Appellant’s untimely amendment, the trial court did not err by failing
to grant a new trial based upon the new ground presented in his supplemental
motion.  See Beathard, 767
S.W.2d at 433.

            We overrule Appellant’s fifth issue.

 

Ineffective Assistance of Counsel

            In his fourth and sixth issues,
Appellant claims that his first and second court appointed attorneys were
ineffective.  For clarity, we note that
Appellant’s initial counsel moved to withdraw once he learned that a plea
agreement would not be reached in the case. 
The trial court granted his motion and appointed a second attorney,
Appellant’s trial counsel.  

Standard
of Review

            Claims of ineffective assistance of
counsel are evaluated under the two step analysis articulated in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674
(1984).  See Hernandez v.
State, 988 S.W.2d 770, 772-74 (Tex. Crim. App. 1999).  The first step requires an appellant to
demonstrate that trial counsel’s representation fell below an objective
standard of reasonableness under prevailing professional norms.  See Strickland, 466 U.S.
at 688, 104 S. Ct. at 2065.  At this
step, an appellant must identify the acts or omissions of counsel alleged to be
ineffective assistance and affirmatively prove that they fell below the
professional norm for reasonableness.  See
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). 

            Under the second step of the Strickland
analysis, an appellant must show prejudice from the deficient performance of
his attorney.  See Hernandez,
988 S.W.2d at 772.  To establish
prejudice, an appellant must prove that but for counsel’s deficient
performance, there is a reasonable probability that the result of the
proceeding would have been different.  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  A “reasonable probability” is defined by the
Supreme Court as a “probability sufficient to undermine confidence in the
outcome.”  Id.

            Any allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.  Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999).  In this regard,
an appellant is required to establish his claims by a preponderance of the
evidence.  Tong v. State,
25 S.W.3d 707, 712 (Tex. Crim. App. 2000). 
Further, a reviewing court will not find ineffectiveness by isolating
any portion of trial counsel’s representation, but will judge the claim based
on the totality of the representation.  See Strickland, 466 U.S. at
695, 104 S. Ct. at 2069.

Discussion

            In his fourth issue, Appellant
alleges that his trial counsel was ineffective because counsel failed to file a
motion to transfer venue.  In his sixth
issue, Appellant argues that his first attorney was ineffective because he
allegedly failed to communicate a plea offer to him in a timely manner.

            Venue.  The record reflects that, at the time of
Appellant’s trial, his trial counsel was under indictment in Angelina County,
Texas for aggravated assault with a deadly weapon.  Despite the fact that there is no evidence in
the record which directly shows the jury knew of this indictment, Appellant
argues that we can infer both that the jury knew of the indictment and that
this knowledge prejudiced their decision on sentencing.

            Even if we assume, arguendo, that
members of the jury were aware of the indictment and that counsel’s failure to
file a motion to transfer venue fell below the professional norm for
reasonableness, we cannot assume that this prejudiced Appellant.  The record shows that counsel announced to
the jury during voir dire that he had been appointed by the trial court to
represent Appellant.  Absent some
additional evidence, we have no reason to believe that a jury would hold an
unproven criminal indictment of an out of town court appointed attorney (an
attorney who was chosen for, and not by, the client) against Appellant.  Because Appellant has presented no such
additional evidence, he has failed to meet his burden to prove prejudice by a
preponderance of the evidence and, therefore, has failed to prove his counsel
was ineffective in not filing a motion to transfer venue.  See Tong, 25 S.W.3d at 712.

            Plea Agreement.  The record reflects that Appellant’s first
attorney sought to withdraw from the case after he was unable to reach a plea
bargain agreement with the State.  It
does not, however, reflect why counsel was unable to reach such an
agreement.  Appellant contends in his
brief an agreement was not reached because counsel failed to notify him of the
State’s offer until it had already been withdrawn.  However, to comply with Strickland,
Appellant was required to present proof sufficient to establish this fact by a
preponderance of the evidence.  See Tong,
25 S.W.3d at 712.  Because the record
does not include any evidence of the omission Appellant relies upon to
establish his ineffective assistance claim, Appellant has not met his burden
under the first step of the Strickland analysis and has failed to
prove counsel was ineffective.  See
id.  

            We overrule Appellant’s fourth and
sixth issues.

 

Disposition

            We affirm the trial
court’s judgment.

 

 

 

                                                                                                   JAMES T. WORTHEN   

                                                                                                               Chief Justice

 

 

Opinion delivered May 16, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

(DO NOT PUBLISH)











[1] See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).





[2] It is undisputed that Appellant, Brown, and M.O. agreed to band
together in an endeavor to “beat [Arnold] up.” 
Brown and M.O. denied knowing that Appellant planned to murder
Arnold.  Therefore, it would be
reasonable for a jury to infer that Appellant enlisted the help of Brown and
M.O. but that he chose to keep secret the final goal of his plan.





[3] Appellant admitted at trial that he shot Arnold a second time in order
to ensure Arnold was dead.