# NO. 12-10-00038-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *AMBER CHRIE WHITWORTH,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #1* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA  COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Amber Chrie Whitworth appeals her conviction for family violence assault.  She raises five issues on appeal.  We affirm.

### BACKGROUND

Appellant was depressed for two weeks after the birth of her daughter, Ember.  After listening to her complain for two weeks, William Tuburen, the child's father, told Appellant to leave if she was so unhappy.  But Tuburen would not let her take the baby.  Appellant began to beat on Tuburen's head and to scratch him.  He wrapped his arms around her to prevent her hitting him, so she bit him.  Tuburen called the police, who interviewed him and took photos of the bite mark and the scratches.  Appellant was so irate that the police were unable to interview her, but she made several inculpatory comments, including admitting scratching and biting Tuburen.  Appellant was arrested and charged with family violence assault.  The information alleged that

> on or about the 29th day of March, A.D. 2009, . . . in the County of Angelina and the State of Texas, one AMBER CHRIE WHITWORTH, Defendant, did then and there intentionally, knowingly, or recklessly cause bodily injury to WILLIAM TUBUREN by BITING HIM.

The couple subsequently went to court and established custody of Ember, but by the time of

Appellant's trial, the couple had reunited. Tuburen sought to have the charges dismissed. During the trial, Tuburen had difficulty remembering the events of the evening he made the complaint against Appellant, and offered excuses for Appellant's actions. Tuburen's main "testimony" came in the form of a transcript of his previous statements, in which he said,

> And she started hitting me in the back of the head. There wasn't no marks from that. I told the police about it, but they didn't take no pictures of the back of my head. And then she started choking me. She bit me, scratched me, and just all kinds of stuff. Eventually I went outside the house because I was tired of her beating on me.

Tuburen agreed that these previous statements, which the State read to him on the record, accurately reflected the facts of the assault that he had previously stated he could not fully remember.

The arresting officer testified about his investigation of the assault at the Tuburen household. The officer stated that Tuburen "said that she had scratched him and bit him. And she basically said that she had bit him and scratched him because he was cheating on her." He identified six photographs, which were admitted into evidence and which showed Tuburen's injuries.

After the State closed, Appellant moved for a directed verdict because there "was no description of any bite by Mr. Tuburen. He did not testify that any bite that's alleged in the Complaint caused any pain. There's insufficient evidence for this case to go to the jury and [we] ask for a directed verdict." The court denied the motion.

Appellant then testified she was depressed after Ember's birth, and that on the morning of the assault, she found "phone messages from some girl, nude pictures or whatever." She testified that she was upset and was going to leave, but then she and Tuburen got into a confrontation over her taking the baby, and they "both hit each other." She also said that at one point, Tuburen was on her, so she bit him on the shoulder or arm to make him let her up or get off her. When she bit him, he released her, and he then went outside and called the police. Appellant offered photographs her grandmother had taken of bruises on Appellant's legs, and testified that her legs had been bruised in the scuffle.

The jury convicted Appellant of family violence assault, and the trial court individually polled the jury to ensure that each of them had found Appellant "guilty." The court sentenced Appellant to ninety days in jail, probated for one year, and assessed a two hundred dollar fine.

2

Appellant filed two motions for new trial. The first motion alleged insufficiency of the evidence because there was no testimony by Tuburen that he had received bodily injury or that he experienced any pain as a result of Appellant's bite. The trial court denied this motion without a hearing. The second motion alleged jury misconduct because two jurors were "pressured to vote guilty because it was the lunch hour." After conducting a hearing during which a juror testified about the deliberations, the trial court denied the motion.

<h2 style="text-align:center">MOTION FOR NEW TRIAL</h2>

Appellant complains that the trial court erroneously denied her second motion for new trial. In her first issue, she argues that the jury engaged in misconduct by considering evidence outside the record. In her fourth issue, she argues that the trial court erred in denying her motion for new trial based on that evidence.

## The Hearing

The State objected to the court's conducting a hearing on Appellant's motion for new trial, noting that a motion for new trial containing an allegation of jury misconduct requires a sworn affidavit in support of the motion. Nonetheless, the court held a hearing at which Juror Griffin was allowed to testify. Griffin testified that the verdict was not "unanimous" because she "felt that we were being pressured to hurry up for lunch." Griffin "strongly" felt Appellant was not guilty, but she voted "guilty," and she then told the judge her vote was "guilty" when the jury was polled. Griffin testified that she regretted her decision not to vote her conscience. She also stated that, during jury deliberations, another juror said, "Oh, it has probably happened before." Griffin said she immediately corrected the juror, explaining that there was no evidence of any other violence. And she testified that during the jury discussions, a juror said that Appellant had "probably done this before." The judge denied the motion after the hearing.

## Waiver

To preserve error caused by juror misconduct, the defendant must either move for a mistrial or file a motion for new trial supported by affidavits of a juror or other person in a position to know the facts of the alleged misconduct. *See* **Trout v. State**, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985); **Menard v. State**, 193 S.W.3d 55, 59 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd). Appellant did not move for a mistrial and did not file an affidavit to support the allegations of jury

misconduct in her motion for new trial. Consequently, she has waived her jury misconduct complaint. *See Trout*, 702 S.W.2d at 620; *Menard*, 193 S.W.3d at 59. But even if we assumed Appellant preserved the issue, she could not prevail.

To demonstrate jury misconduct, a defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. *Gomez v. State*, 991 S.w.2d 870, 871 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd) (citing *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981)). The issue of whether jury misconduct occurred is determined by the trial court. *Id*. at 871. The finding of the trial court that no jury misconduct occurred is binding on the reviewing court and will be reversed only where a clear abuse of discretion is shown. *Id*.

A new trial must be granted when "after retiring to deliberate, the jury has received other evidence . . . ." TEX. R. APP. P. 21.3(f). Jurors must base their decisions on guilt and punishment on the "information obtained in the courtroom: the law, the evidence, and the trial court's mandates." *Ocon v. State*, 248 S.W.3d 880, 884 (Tex. Crim. App. 2009). But jurors are prohibited from testifying "as to any matter or statement occurring during the jury's deliberations, or the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to the verdict." TEX. R. EVID. 606(b); *State v. Lewis*, 151 S.W.3d 213, 219 (Tex. App–Tyler 2004, pet. ref'd). However, a juror may testify about (1) whether any outside influence was improperly brought to bear upon any juror, or (2) to rebut a claim that the juror was not qualified to serve. TEX. R. EVID. 606(b).

Here, there was no evidence of influence or evidence from outside the jury room. Griffin testified about "matter[s] or statement[s] occurring during the jury's deliberations," and the effect of those matters or statements on the deliberative process. Rule 606(b) prohibits this testimony. Because the record does not include any admissible evidence that provides a proper basis for granting a motion for new trial, we could not have concluded that the trial court abused its discretion in denying the motion, even if the issue were preserved.

Appellant's first and fourth issues are overruled.

## EVIDENTIARY SUFFICIENCY

In her second and third issues, Appellant argues that the evidence is legally and factually insufficient to support her conviction. More specifically, she contends that the State's evidence

fails to establish that the bite she inflicted on Tuburen caused him any physical pain or any impairment of his physical condition.

**Standard of Review**

"Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction." *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979)).  The standard of review is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000).  The evidence is viewed in the light most favorable to the verdict.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *LaCour*, 8 S.W.3d at 671.  The conviction will be sustained "unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence."  *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony.  *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994).  Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain.  *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  If a reviewing court finds the evidence legally insufficient to support a conviction, the result is an acquittal.  *Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

In conducting a factual sufficiency review of the evidence supporting the jury's verdict, we consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact.  *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002) (verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust"); *see Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).  A clearly wrong and manifestly unjust verdict occurs where the jury's finding

"shocks the conscience" or "clearly demonstrates bias." ***Jones v. State***, 944 S.W.2d 642, 648 (Tex. Crim. App. 1997).

**Applicable Law**

A person commits the offense of family violence assault if she "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2009). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(8) (Vernon Supp. 2009). Pain is "an unpleasant sensation, occurring in varying degrees of severity resulting from injury, disease, or emotional disorder." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 942 (1978).

The statutory definition of "bodily injury" appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. ***Lane v. State***, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). The failure of a complaining witness to specifically testify that he felt pain or that his bruises and strain hurt did not defeat the defendant's conviction for aggravated assault. ***Goodin v. State***, 750 S.W.2d 857, 859 (Tex. App. –Corpus Christi 1988, pet ref'd). In ***Goodin***, the defendant drove with the complaining witness hanging onto the hood of a car, causing the complaining witness strains and bruises. The court noted that

> [t]he terms "physical pain," "illness," and "impairment of physical condition" are terms of common usage, and when construed "according to the fair import of their terms," in the context used . . . are not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to their application."
>
> People of common intelligence understand both physical pain and some of the natural causes of pain. 23 C.J.S. *Criminal Law* § 902 (1961) recognizes the fundamental [principle] that "[i]n arriving at their verdict the jury are not confined to a consideration of the palpable facts in evidence, but they may draw reasonable inferences and make reasonable deductions therefrom . . . ." It is a reasonable inference men of common intelligence could certainly make that [the victim's] bruises and muscle strain caused him "physical pain" according to the fair import of that term as used in section 1.07(a)(7). The fact of a physical intrusion on the body in the form of a cut or scrape can itself be sufficient evidence of the associated physical pain necessary to show "bodily injury."

*Id*. (citations and brackets omitted).

**Analysis**

Appellant contends that since Tuburen did not specifically say that the bite she inflicted caused him any physical pain or impairment, the evidence is legally insufficient to establish the

6

element of bodily injury. The State's primary evidence is a transcript of Tuburen's previous statements that Appellant hit him in the back of the head, choked him, bit him, and scratched him. There is also the testimony of the arresting officers who testified Tuburen said Appellant bit him. Appellant testified and admitting biting Tuburen while he was holding her. According to Appellant's testimony, the bite was so effective (i.e. painful) that Tuburen released her. Finally, the State introduced the photographs the officers took of the scratches and the bite mark, with some of the photographs showing a glistening surface indicating an abrasion or cut into the subcutaneous layer of skin. From this evidence, a rational trier of fact could have found that Appellant caused bodily injury to Tuburen. Therefore, the evidence is legally sufficient to support Appellant's conviction.

As to factual sufficiency of the evidence to show bodily injury, there is no evidence contradicting that the bite occurred or that Tuburen responded to the bite by releasing Appellant. Therefore, the evidence is also factually sufficient to support Appellant's conviction.

Having reviewed the record in its entirety, we conclude that the evidence is legally and factually sufficient to establish that bodily injury occurred. Therefore, the jury was entitled to find Appellant guilty of family violence assault. Accordingly, Appellant's second and third issues are overruled.

## MOTION FOR INSTRUCTED VERDICT

In her fifth issue, Appellant contends the trial court erred in denying her motion for instructed verdict at the close of the State's case. Appellant contends, as she did in her second and third issues, that because the element of bodily injury was not established, the trial court erred in denying her motion for instructed verdict. We have held that the evidence is legally and factually sufficient to establish bodily injury. Therefore, we hold the trial court did not err in denying her motion for instructed verdict. Appellant's fifth issue is overruled.

## DISPOSITION

The judgment of the trial court is *affirmed*.

_____**SAM GRIFFITH**_____

Justice

Opinion delivered September 1, 2010.
_Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J._

(DO NOT PUBLISH)